*1153 ATTORNEY DISCIPLINARY PROCEEDINGS
JjPER CURIAM.*
This disciplinary matter arises from two counts of formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Rose M. Lain, an attorney licensed to practice law in Louisiana.
UNDERLYING FACTS

Count I

Willie and Maggie Dorty, residents of New Orleans, suffered damage to their home in the May 8, 1995 flood. The Dor-tys’ home was mortgaged to Comerica Mortgage Corporation (“Comerica”) and insured against flood damage under the National Flood Insurance Program. The Dortys made a flood damage claim, and in July 1995, the insurer issued a check in the amount of $20,027.57 payable to Mr. and Mrs. Dorty and Comerica. Under the terms of its mortgage agreement, Comeri-ca was entitled to receive these proceeds and apply them to the Dortys’ mortgage debt, or at the very least, to be assured that the proceeds were used to repair the damage to the Dortys’ home (which served as collateral for Comerica’s loan).
Shortly after the check was issued, respondent contacted Comerica’s attorney, indicating that she represented Mr. and Mrs. Dorty and that she believed they were entitled to keep a portion of the insurance proceeds for flood damage to their personal ^property. After negotiation, respondent and Comerica agreed that Mr. and Mrs. Dorty would receive $4,351.05 of the proceeds, and that the balance, $15,676.52, would go to Comerica. Despite telephone calls and correspondence sent to respondent by counsel for Comerica, the Dortys .did not appear to endorse the insurance check. Several months passed, and the check became stale. Comerica then requested that the insurer issue a replacement check for the same amount.
The replacement check was issued on February 16, 1996 and, like the original, was payable to Mr. and Mrs. Dorty and Comerica. However, the insurer inadvertently sent the replacement check directly to Mr. and Mrs. Dorty, rather than to Comerica or its attorneys. Mr. and Mrs. Dorty brought the replacement check to respondent, and respondent and her clients endorsed the check.[1] On February 29, 1996, respondent deposited the check into a personal/office checking account titled “Attorney Rose Lain.”[2] Comerica did not endorse the replacement check, and respondent and her clients did not have Comerica’s permission to negotiate or deposit the check. In fact, respondent failed to inform Comerica or its counsel that she and/or her clients had even received the replacement check.
From the $20,027.57 in funds deposited into her personal/office checking account, respondent retained $350 as attorney’s fees and gave Mr. and Mrs. Dorty a check for $4,001.05 on March 2, 1996. On March 8, 1996, respondent wrote herself a check for $10,000, noting in the “memo” portion of the check that it was for a “secured credit card.”[3] On April 3, 1996, respon *1154 dent gave the Dortys a check for the |3remaining $15,676.52 of the insurance proceeds, based on the clients’ representation that they would turn this check over to Comerica. However, they did not do so, and Comerica was not paid the sum to which it was entitled. Ultimately, Comeri-ea’s counsel filed a complaint against respondent with the ODC.

Count II

In a separate matter, Reginald and La-nell Varnado retained respondent to file a Chapter 7 bankruptcy on their behalf. In June and July 1997, Mr. and Mrs. Varnado paid respondent a total of $375 in attorney’s fees and costs. Respondent prepared but lost the first set of bankruptcy documents needed to initiate the Varnados’ bankruptcy filing. She then filed a second set of documents without obtaining her clients’ signatures on them. Respondent also forged Mrs. Varnado’s signature on an “Application to Pay Filing Fees in Installments,” which respondent submitted to the bankruptcy court without the Varnados’ knowledge or permission. In doing so, respondent knowingly misrepresented to the court that she had not received the initial filing fees from the Varnados, and that she had not been paid any attorney’s fees, when in fact she had.[4]
The bankruptcy court approved the fee installment accommodation submitted by respondent in the Varnado case in July 1997. At that time, and without the consent of the Varnados, respondent used $200 of the Varnados’ funds to pay the filing fees for another bankruptcy client. Respondent did not actually pay the fees due the bankruptcy court in the Varnado case until September 1997.
In October 1997, a meeting of creditors was held in the Varnados’ bankruptcy. Respondent was required to attend this meeting on behalf of her clients, but she failed |4to do so. During the meeting, the Varnados testified under oath before the bankruptcy trustee that they had paid $375 to respondent for attorney’s fees and costs prior to the time that she submitted the fee installment accommodation. They also testified that they had not signed the bankruptcy petition that respondent filed, and that the signature on the fee installment accommodation purporting to be Mrs. Varnado’s was a forgery. The trustee filed a motion seeking an examination of respondent’s actions, and if merited, the imposition of sanctions.
Following a December 3,1997 hearing in the matter, United States Bankruptcy Judge Jerry Brown determined that respondent (1) forged Mrs. Varnado’s signature on the application to pay filing fees in installments; (2) filed the application to pay in installments even though she had previously been paid those fees, in full, by the Varnados; and (3) violated the Federal Rules of Bankruptcy Procedure by filing the bankruptcy petition without the Varna-dos’ signatures. The judge sanctioned respondent and ordered her to reimburse Mr. and Mrs. Varnado $350, representing $200 paid to respondent by the Varnados and $150 paid by the Varnados to the attorney whom they retained after they discharged respondent. Respondent complied with the order and paid $350 to Mr. and Mrs. Varnado on December 12, 1997.
Mr. and Mrs. Varnado filed a complaint against respondent with the ODC in December 1997. Respondent allegedly failed to fully cooperate in the ODC’s investigation of this complaint.
DISCIPLINARY PROCEEDINGS

Formal Charges

After its investigation, the ODC filed two counts of formal charges against respondent, alleging her conduct in the Dorty and Varnado matters violated numerous [^provisions of the Rules of Professional *1155 Conduct.[5] Respondent failed to answer or otherwise respond to the formal charges; accordingly, the matter was submitted to the hearing committee solely on documentary evidence.

Hearing Committee Recommendation

After reviewing the documentary evidence submitted by the ODC, the hearing committee concluded that the record clearly and convincingly demonstrates that respondent committed the misconduct set forth in the formal charges.
Turning to a discussion of the appropriate sanction, the committee determined that a suspension is the baseline sanction for respondent’s misconduct. As aggravating factors, the committee found prior discipline,[6] dishonest or selfish motive, failure to cooperate, vulnerability of the victim, and substantial experience in the practice of law (admitted 1987). While noting the weakness of the mitigating factors, the committee acknowledged respondent’s personal problems (the pressure of her own bankruptcy and related financial difficulties) and the imposition of other penalties or sanctions (the monetary sanction imposed upon respondent by the bankruptcy court). Under the guidelines set forth in Louisiana State Bar Ass’n v. Hinrichs, 486 So.2d 116 (La.1986), the committee recommended that respondent be suspended from the practice of law for one year and one day. The committee also 1 firecommended conditions to be imposed in the event respondent applies for reinstatement following her suspension.

Disciplinary Board Recommendation

The disciplinary board found that respondent violated duties owed to her clients, the legal system, and the profession. The board also found that respondent acted knowingly and negligently in the Dorty matter, and she acted intentionally in the Varnado matter. The board further pointed out that Comeriea suffered an actual loss because respondent failed to protect its third-party interest in the flood insurance proceeds, as required by the Rules of Professional Conduct. Instead, respondent gave Comerica’s funds to her clients, after converting $10,000 of the funds to her own use. In addition, the Varnados suffered injury by the delay in the filing of their bankruptcy.
Given these factors, the board found the sanction recommended by the committee is too lenient, and that a two-year suspension is justified. However, it found the presence of mitigating circumstances justified deferral of a portion of this suspension.
Accordingly, the board recommended that respondent be suspended for two years, six months to be deferred, with the same conditions for reinstatement as set forth by the hearing committee. The board further recommended that respondent be assessed with all costs and expenses of these proceedings, with legal interest to commence running thirty days from the date of finality of the court’s judgment until paid.
*1156 Neither respondent nor the ODC objected to the board’s recommendation. However, this court, pursuant to Supreme Court Rule XIX § 11(G)(1)(a), ordered the parties to submit written briefs (without oral argument) addressing the issue of the ^appropriate sanction for respondent’s misconduct. Both respondent and the ODC submitted briefs.
DISCUSSION
The record supports the findings of the hearing committee and disciplinary board that respondent violated the professional rules as charged. In connection with the Dorty matter, respondent clearly failed to protect the third-party funds entrusted to her, and she converted a portion of those funds to her own use. In the Varnado matter, respondent intentionally forged one of her client’s signatures on an application to pay the bankruptcy court’s filing fees in installments, even though her clients had given her the full amount of the fee, and then used the clients’ funds to pay the filing fees of another client. In addition to respondent’s blatant misrepresentations to the bankruptcy court, respondent’s conduct also harmed her clients, because their bankruptcy filing was delayed. While we recognize respondent was sanctioned by the bankruptcy court, the fact remains that her actions represent violations of the professional rules and justify discipline by this court.
Turning to the issue of the appropriate sanction for respondent’s misconduct, we are mindful that the purpose of lawyer disciplinary proceedings is not primarily to punish the lawyer, but rather to maintain appropriate standards of professional conduct to safeguard the public, to preserve the integrity of the legal profession, and to deter other lawyers from engaging in violations of the standards of the profession. Louisiana State Bar Ass’n v. Guidry, 571 So.2d 161 (La.1990).
Considering the facts of this case, we agree with the disciplinary board that the baseline sanction for respondent’s misconduct is a suspension from the practice of law for a period of two years. Unlike the board, however, we find the mitigating factors present in this case (personal problems and imposition of other sanctions) | sare not significant enough to justify a deviation from the baseline sanction. Accordingly, we will suspend respondent from the practice of law for a period of two years.[7]
DECREE
Upon review of the findings and recommendation of the hearing committee and the disciplinary board, and considering the record and the briefs submitted by the parties, it is ordered that Rose M. Lain be suspended from the practice of law in Louisiana for a period of two years. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

 Traylor, J., not on panel. Rule IV, Part II, § 3.

. The replacement check bears the endorsements of Maggie and Willie Dorty and "attorney Rose M. Lain.”

. Respondent has no client trust account. She explained to the ODC in a deposition that she did not think it was necessary for her to have a client trust account because she does not "normally receive money from clients that I hold any period of time.”

.A deposit sufficient to cover this $10,000 check was not made into the account until a month later.

. Under the Federal Rules of Bankruptcy Procedure, counsel for a debtor may not accept attorney's fees prior to the payment in full of the filing fees.

. The charges alleges violations of Rules 1.3 (failure to act with diligence and promptness in representing a client), 1.4 (failure to communicate with a client), 1.5 (fee arrangements), 1.15 (safekeeping property of a client or third person), 1.16 (termination of the representation), 3.3 (candor toward the tribunal), 3.4 (fairness toward opposing parties and counsel), 8.1(c) (failure to cooperate with the ODC in its investigation), 8.4(a) (violation of the Rules of Professional Conduct), 8.4(b) (commission of a criminal act reflecting adversely on the lawyer’s honesty, trustworthiness, or fitness as a lawyer), 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), 8.4(d) (engaging in conduct prejudicial to the administration of justice), and 8.4(g) (failure to cooperate with the ODC in its investigation) of the Rules of Professional Conduct.

. Respondent was admonished in 1996 for misconduct arising out of her handling of a bankruptcy matter. Respondent’s client gave her $300 to file a Chapter 13 bankruptcy, but respondent "forgot” to timely file the pleadings. As a result, the client's house was sold at auction. Moreover, respondent did not refund the $300 fee to the client until eleven months later.

. We decline to impose any conditions on reinstatement at this time. Such conditions may be addressed if and when respondent seeks reinstatement to the practice of law.