817 So.2d 1123 (2002)
In re William Tracy BARSTOW.
No. 2001-B-3240.
Supreme Court of Louisiana.
May 14, 2002.
*1124 Charles B. Plattsmier, Baton Rouge, Joseph L. Shea, Shreveport, for applicant.

ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.[*]
This disciplinary proceeding arises from two counts of formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, William Tracy Barstow, an attorney licensed to practice law in the State of Louisiana.

UNDERLYING FACTS

Count IAustin Matter
In May 1996, Jimmy Willard Austin, II ("Jimmy") was charged with first degree murder in the 27th Judicial District Court for the Parish of St. Landry, along with three other individuals. After determining Jimmy was indigent, the trial court appointed respondent, a private attorney who contracted with the local Indigent Defender Board ("IDB"), to represent him. Because this matter was a capital case, respondent received from the IDB a one-time payment of $5,000, $25 per hour for out of court appearances and $35 per hour for court appearances, in addition to receiving his regular monthly stipend from the IDB.
*1125 In May 1997, Jimmy's parents, Jimmy and Debra Austin, paid respondent $10,000. The initial purpose of the payment is in dispute. Jimmy and his parents assert respondent advised that he needed $20,000 to make "deals" with the district attorney's office to arrange for Jimmy's release on bond and a reduced plea. In contrast, respondent alleges the payment was specifically unrelated to the plea negotiations. He maintains Jimmy insisted he did not want a court-appointed lawyer, but rather wanted to retain respondent on a private basis because he considered respondent to be the "best" criminal defense attorney in the area. In any event, it is undisputed that, upon receiving the fee payment, respondent no longer accepted funds from the IDB for his representation of Jimmy.
Respondent entered into discussions with the district attorney's office about a possible reduced plea to accessory after the fact. However, several months later, a grand jury returned a superceding criminal indictment charging Jimmy with aggravated kidnaping, armed robbery and second degree murder on the basis that evidence from the first degree murder trial of one of his co-defendants indicated Jimmy was more culpable than it originally appeared.[1] Thereafter, respondent met with Jimmy and his parents to advise the district attorney's office had withdrawn its plea offer, and that Jimmy was going to trial on the superceding indictment.
At this point, respondent offered to return the $10,000 fee to the Austins. The Austins told respondent to retain the money, although their reasons for doing so are disputed. The Austins maintain that they wanted respondent to keep the money because respondent promised to obtain another plea arrangement with the district attorney where Jimmy would plead guilty to second degree murder and be incarcerated for no more than three years of a twenty year sentence and, in the event the case went to trial, respondent would act as lead counsel. By contrast, respondent asserts the Austins asked him to keep the $10,000 to supplement his income and to proceed with the case to its conclusion. He alleges he would never have promised that Jimmy would only serve three years, despite his being a first offender, because of the overwhelming evidence against him.
Following jury selection in Jimmy's trial, respondent became ill for a prolonged period of time. As a result, the trial court declared a mistrial. Being unaware that the Austins had retained respondent on a private basis to represent their son, the trial court removed respondent as indigent counsel and appointed other counsel for Jimmy, although respondent was permitted to remain on the case on a voluntary basis.
Several months later, jury selection began in Jimmy's new trial. The court permitted respondent to enroll as counsel in the proceedings, but specifically barred him from acting as lead counsel. Respondent still fully participated in the four-day trial, with the exception of his absence for one-half day due to another court appearance.[2] During respondent's absence, one *1126 of Jimmy's co-defendants, a critical witness to the case, testified on behalf of the prosecution. Ultimately, Jimmy was found guilty as charged and sentenced to serve two concurrent life terms, without benefit of probation or parole, plus thirty years.
Shortly after sentencing, Jimmy and Mr. Austin filed complaints against respondent with the ODC, seeking a return of the $10,000 fee. In support, they alleged that they paid the $10,000 attorney's fee to respondent because he promised results in the case, but did not obtain that result. Moreover, they alleged that respondent had failed to advise them that he was barred from acting as lead counsel at the criminal trial. They questioned why respondent could request payment of a legal fee when he was already receiving compensation from the IDB.

Count IIContempt Citations
Prior to September 30, 1998, the Court of Appeal, Third Circuit, held respondent in contempt of court on three separate occasions for failing to file timely briefs in criminal appeals and ordered him to pay fines totaling $1,100 plus costs. On the third occasion, respondent was placed on unsupervised probation for a period of two years with the special condition that, if he became delinquent in any criminal or civil matter, the contempt charge would be reactivated.
Subsequently, respondent was delinquent in filing a brief in another criminal matter and was charged with contempt for a fourth time.[3] As a result, the court revoked respondent's probation and sentenced him to three days incarceration. The court then filed a disciplinary complaint against respondent.

DISCIPLINARY PROCEEDINGS

Formal Charges
Following an extensive investigation, the ODC instituted formal charges alleging, with regard to Count I relative to the Austin matter, that respondent violated Rules 1.5 (assessment of an excessive fee), 1.8 (conflict of interest), 1.16 (failure to decline representation) and 8.4 (professional misconduct) of the Rules of Professional Conduct, and Supreme Court Rule XXXI, relating to the Indigent Defender Standards, when he accepted a legal fee from his client.
As to Count II relating to the contempt citations, the ODC alleged respondent's failure to timely file appellate briefs violated Rules 1.3 (neglect of a legal matter), 3.4(c) (knowingly disobeying an obligation under the rules of a tribunal) and 8.4 (professional misconduct) of the Rules of Professional Conduct.[4]
Respondent filed an answer to the charges. While he admitted to the conduct *1127 subject of Count II relative to the contempt citations, he denied any misconduct as to Count I relating to the Austin matter. He alleged Supreme Court Rule XXXI, the standards relative to indigent defenders, was not applicable because he was not a full-time employee of the IDB and, thus, could engage in a private criminal practice in the 27th Judicial District. In support, he attached a letter directed to the ODC from James Edward Lopez, Chief Indigent Defender of the 27th Judicial District, which confirmed respondent was a private attorney and not considered an IDB staff attorney. Moreover, respondent alleged, at the time he accepted the fee, there was no state law or local rule which barred him from accepting a private retainer from his indigent client for the services rendered to the client.

Formal Hearing
At the formal hearing, the parties stipulated to Count II, the charge relating to the contempt citations. Therefore, the only issue to be addressed with regard to this matter was sanctions.
As to the allegations subject of Count I, the ODC alleged respondent violated Rule 1.8[5] because he exercised his position of extreme influence when he extorted the funds from his client and his client's family. As evidence, it relied on the fact the family paid the fee when respondent was already being paid by the IDB and he failed to advise anyone that he had received the funds and was acting in a private capacity for the Austin family. The ODC presented the testimony of numerous witnesses in support of its case.
Respondent testified that, after accepting the fee from the Austins, he did not advise the court of his change in employment status because he did not think it was necessary. He contended that he later sought to advise the court of the change after the trial began, but he was removed as counsel due to his illness. Respondent vehemently denied he promised a plea, solicited a fee, or extorted money from his client.
Respondent also presented the testimony of Mr. Lopez of the IDB. Mr. Lopez testified that after respondent received the fee from the Austins, he sought to return the $5,000 "capital case" payment he had received from the IDB. However, Mr. Lopez advised respondent to retain the funds, reasoning respondent earned the funds while defending Jimmy of the first degree murder charge prior to the reindictment.

Recommendation of the Hearing Committee
The hearing committee concluded the ODC failed to sustain its burden of proving the allegations in Count I relating to the Austin case. As a threshold matter, it found that Supreme Court Rule XXXI[6] was inapplicable to this case, because *1128 respondent was not a permanent, full-time employee of the IDB, but was instead a private attorney retained on a case-by-case basis by the IDB. The committee further found that the weight of the evidence supported the conclusion that respondent did not extort a fee, promise a plea, or communicate an intent to unethically and illegally influence the district attorney's office or the court. It recognized that the $10,000 was not an excessive fee given the seriousness of the charges and the services rendered. Therefore, the committee dismissed Count I in its entirety.
As to Count II, the committee agreed that these charges were proven by clear and convincing evidence, based on respondent's stipulation. In determining an appropriate sanction for the misconduct subject of Count II, the committee concluded respondent had negligently breached a duty to his clients and the courts by failing to timely file his appellate briefs, but recognized there had been no actual injury to his clients and that respondent had already been sanctioned by the appellate court. As aggravating factors, the committee recognized respondent's pattern of tardiness in the filing of briefs, substantial experience in the practice of law[7] and prior disciplinary record.[8] In mitigation, the committee noted the absence of dishonest or selfish motive, respondent's free disclosure and cooperative attitude with the ODC, his good character and reputation in the legal community, the remoteness of his prior offenses, his personal problems stemming from his illness in July 1998 and imposition of other sanctions by the court of appeal. Based on these factors, the committee recommended that respondent be publicly reprimanded.

Disciplinary Board Recommendation
The disciplinary board accepted the committee's findings of fact. While it also concluded there was insufficient evidence to support the allegations subject of Count I relating to the Austin matter, it deviated from the committee's conclusions of law with regard to Count II, relative to the contempt citations, insofar as the board determined the committee erred in failing to find violations of Rules 8.4(a) (violating the professional rules) and 8.4(d) (engaging in conduct prejudicial to the administration of justice), in addition to Rule 1.3 (neglect of a legal matter).[9] It found respondent violated duties owed to his client and to the legal system by filing appellate briefs late, and that his actions were negligent and, while it caused little, if any, actual injury to his clients, there was great potential harm to the clients. Despite finding the additional violation of Rules 8.4(a) (violating the professional rules) and 8.4(d) (engaging in conduct prejudicial to the administration of justice), the board nevertheless adopted the committee's recommendation of imposition of a public reprimand.
The ODC filed an objection to the board's findings and recommendation. Pursuant to Supreme Court Rule XIX, § 11(G), the matter was set on the court's docket for briefing and oral argument.

*1129 DISCUSSION
Bar disciplinary matters come within the original jurisdiction of this court. La. Const. art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343, 348; Louisiana State Bar Ass'n v. Boutall, 597 So.2d 444, 445 (La.1992). While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee's factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
Applying these precepts to the instant case, we find the record supports the hearing committee's factual findings that respondent did not extort a fee from the Austins, nor did he promise any result in the criminal case in exchange for the fee. Likewise, we see no basis for finding respondent's acceptance of a fee from the Austins created any conflict of interest.
However, we find the committee and board erred in not finding that respondent's failure to notify the trial court of his acceptance of the fee constituted conduct prejudicial to the administration of justice in violation of Rule 8.4(d). While we recognize there was no explicit provision of law requiring respondent to give notice of the fee at the time he accepted it,[10] we find respondent had an implicit duty to disclose to the trial court, which appointed him to the indigent representation, as well as to his employer, the IDB, any facts which could materially impact that representation.[11] Clearly, the acceptance of a private fee by respondent is a fact relevant to the representation, and respondent's failure to make full disclosure to the trial court had the potential to affect the administration of justice.[12] Therefore, with regard to Count I, we find respondent's actions constitute a violation of Rule 8.4(d).
In Count II, it is undisputed that respondent was held in contempt by the court of appeal on four separate occasions for failure to timely file briefs, resulting in sanctions totaling over $1,000. This conduct clearly constituted neglect of a legal matter in violation of Rules 1.3 and conduct prejudicial to the administration of justice under Rule 8.4(d).
Having found violations of the Rules of Professional Conduct, we now turn to a determination of an appropriate sanction for this misconduct. The purpose of disciplinary proceedings is not primarily to punish the lawyer, but rather to maintain the appropriate standards of professional conduct, to preserve the integrity of the legal profession and to deter other lawyers from engaging in violations of the standards of the profession. In re: Vaughan, 00-1892 (La.10/27/00), 772 So.2d 87; In re: Lain, 00-0148 (La.5/26/00), 760 So.2d 1152; Louisiana State Bar Ass'n v. Levy, 400 So.2d 1355 (La.1981). The discipline *1130 to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. In re: Redd, 95-1472 (La.9/15/95), 660 So.2d 839; Louisiana State Bar Ass'n v. Boutall, 597 So.2d 444 (La.1992); Louisiana State Bar Ass'n v. Whittington, 459 So.2d 520 (La.1984).
As stated earlier, respondent's failure to advise the trial court of his acceptance of the private fee in Count I had the potential to have a prejudicial impact on the administration of justice by depriving the trial court of material information that could impact the representation. In Count II, respondent's failure to timely file the legal briefs caused actual harm to his clients by delaying resolution of their criminal matters and potential harm by jeopardizing his clients' appellate rights. His actions also display a disregard for his professional obligations and a lack of respect for the authority of the court.
As aggravating factors, we recognize respondent's substantial experience in the practice of law, a pattern of misconduct (with regard to Count II only) and his prior disciplinary record. We find several mitigating factors are present, including his lack of a dishonest or selfish motive, cooperation in the disciplinary process, good character and reputation and imposition of other sanctions (with regard to Count II only).
Having considered all these factors, we conclude that the appropriate sanction for respondent's misconduct as charged in Count I is a three-month suspension from the practice of law. However, in view of the mitigating factors and the fact that the law was somewhat unclear on this issue, we will defer the suspension in its entirety, and place respondent on probation for a period of one year, subject to the provision that any misconduct during this time will be grounds for making the deferred portion of the suspension executory.
As to Count II, we find respondent's conduct was negligent rather than intentional, and that he has already been punished by the court of appeal under its contempt powers. Under these circumstances, and considering the sanction we have already imposed for the conduct charged in Count I, we conclude a public reprimand is the appropriate sanction for the misconduct charged in Count II.[13]

DECREE
For the reasons assigned, it is ordered that respondent be suspended from the practice of law for a period of three months for the misconduct charged in Count I. This suspension shall be fully deferred, and respondent shall be placed on probation for a period of one year, subject to the provision that any misconduct during this time will be grounds for making the deferred portion of the suspension executory. It is further ordered that respondent be and hereby is publicly reprimanded for the misconduct charged in Count II. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence *1131 thirty days from the date of finality of this court's judgment until paid.
TRAYLOR and JOHNSON, JJ., dissent and would impose a greater penalty.
NOTES
[*] Retired Justice Walter F. Marcus, Jr., assigned as Justice ad hoc, sitting for Associate Justice Jeannette Theriot Knoll, recused.
[1] Apparently, respondent was unaware of his client's full participation in the crime at the time he was negotiating with the district attorney's office. Specifically, two of respondent's co-defendants testified Jimmy and the other co-defendant concocted and principally carried out the plan to assault, kidnap and rob the victim at gun point, which ultimately led to the victim's death while the victim's home was being burglarized.
[2] Respondent was absent because he had been compelled to appear before the Court of Appeal, Third Circuit, in response to a rule for contempt based on his failure to file appellate briefs in that court. These contempt proceedings form the basis of Count II of the formal charges in the instant matter.
[3] In addition to the times respondent had been held in contempt, the court of appeal recognized that there were numerous other instances where respondent failed to timely file briefs but had not been cited for contempt.
[4] While the formal charges only cite a general violation of Rule 8.4 of the Rules of Professional Conduct, the factual allegations assert violations of, as to Counts I and II, Rules 8.4(a) (engaging in professional misconduct) and 8.4(d) (engaging in conduct prejudicial to the administration of justice), as well as Rule 8.4(e) (stating or implying ability to influence improperly a judge, judicial officer, governmental agency or official) with regard to Count I. Further, with regard to Supreme Court Rule XXXI subject of Count I, the charges allege a violation of section (A)(3) of the provision. This section bars full-time indigent defenders from engaging in the private practice of criminal law in the same jurisdiction.
[5] Rule 1.8, entitled "Conflicts of Interest: Prohibited Transactions," provides: "[a]s a general principle, all transactions between client and lawyer should be fair and reasonable to the client. Furthermore, a lawyer may not exploit information relating to the representation to the client's disadvantage."
[6] Supreme Court Rule XXXI, entitled "Indigent Defender Standards," provides in pertinent part:

A. (3) Private Practice of Law. A staff attorney of a district indigent defender board, who is a permanent, full-time employee of the district board, shall not engage in the private practice of criminal law in the same jurisdiction in which he or she serves as a staff attorney ...
B. Intent of Application of Rules. The intent of this Rule is to regulate the practice of law only to the extent specifically articulated above.
C. Effective Date. This Rule shall become effective on January 1, 1998 and shall continue thereafter until amended or changed under the authority of future orders of this Court.
[7] Respondent, who was admitted to the practice of law in 1963, had been practicing law for thirty-five years at time of the misconduct.
[8] Respondent's prior disciplinary record consists of a formal private reprimand which was imposed in 1984 (COPR file no. 7112) and a formal public reprimand imposed in 1989 (COPR file no. 9361-A).
[9] The board concurred in the committee's failure to find a violation of Rule 3.4(c), which provides in pertinent part that "[a] lawyer shall not knowingly disobey an obligation under the rules of a tribunal ..." [emphasis added]. As recognized by the committee, respondent's failure to file timely briefs was negligent, not knowing or intentional.
[10] The IDB of the 27th JDC has since enacted a rule, stemming from this case, barring all public defenders from accepting any money for representation absent a successful application to the respective presiding court to traverse the client's indigency status.
[11] We recognize that under the facts of this case, respondent made disclosure to the IDB.
[12] Our opinion should not be read as endorsing or condemning the acceptance of private fees by attorneys appointed to represent indigent defendants. We merely hold that, if the attorney is not otherwise prohibited by local rule or Supreme Court rule from accepting such fees, the attorney must make full disclosure to the trial court, and the trial court may then take such action as it deems appropriate.
[13] We recognize that the baseline sanction for knowingly disobeying an obligation under the rules of a tribunal under Rule 3.4(c) is suspension. See, e.g., In re: Graves, XXXX-XXXX (La.5/11/01), 802 So.2d 530, In re: White, 97-1152 (La.9/19/97), 699 So.2d 375. While respondent's conduct is similar to the conduct in those cases, the critical distinction in this case is the committee's factual finding (which is not clearly wrong) that respondent's actions were negligent rather than knowing, and therefore did not constitute a violation of Rule 3.4(c).