*489 ATTORNEY DISCIPLINARY PROCEEDINGS
|tPER CURIAM.
This disciplinary matter arises from two sets of formal charges involving five counts of misconduct filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Charles H. White, a currently disbarred attorney.
PRIOR DISCIPLINARY HISTORY
At the outset, we note that respondent has a lengthy prior disciplinary record for conduct unrelated to that at issue in the instant matter. In 1997, respondent was suspended from the practice of law for one year for failing to comply with court orders and failing to cooperate in a disciplinary investigation. In re: White, 97-1152 (La.9/19/97), 699 So.2d 375 (“White I”). Less than six months after White I, respondent was disbarred from the practice of law for failing to communicate with a client, failing to refund unearned fees, failing to act with competence and diligence, and failing to cooperate in a disciplinary investigation. In re: White, 97-2731 (La.2/6/98), 706 So.2d 964 (“White II”). In 2001, respondent was again disbarred for failing to disburse and account for client funds, failing to cooperate in a disciplinary investigation, and engaging in the unauthorized practice of law. In re: White, 00-2732 (La.4/25/01), 791 So.2d 602 (“White III”).[1] It is against this backdrop that we consider the instant disciplinary charges.
UNDERLYING FACTS

DeLarge Matter

In 1996, Bettye A. DeLarge retained respondent to represent her in connection with claims stemming from a vehicular accident. On June 30, 1997, the tortfea-sor’s insurance carrier settled Ms. De-Large’s bodily injury claims for $10,000. Ms. DeLarge gave respondent permission to retain possession of the check pending resolution of a billing dispute with a third-party medical provider. However, contrary to his client’s instructions, and without her knowledge or consent, respondent forged her name on the check and converted the funds to his own use.
*490 Subsequently, Ms. DeLarge made numerous attempts to contact respondent regarding the status of her ease, but was unable to reach him. Respondent eventually provided his client with an accounting. According to this accounting, the medical payments and attorney’s fees exceeded the settlement amount.
During this period of time, respondent was suspended from the practice of law in White I and was disbarred in White II. Nonetheless, respondent continued to represent Ms. DeLarge and pursued a UM claim against her insurance carrier.
On May 5, 1998, Ms. DeLarge’s insurance carrier issued five drafts totaling $2,000 to medical providers, and forwarded them to respondent. Respondent failed to advise his client or her medical providers of the receipt of the funds, and failed to | ¡¡disburse the funds. At all times, Ms. DeLarge and her insurance carrier were unaware of respondent’s suspension and disbarment.

Mitter Matter

On May 4, 1992, respondent settled the personal injury case of his client, Annie Mae Mitter, for the sum of $238,526.73.[2] Respondent’s attorney’s fee was $95,410.69, representing 40% of the settlement. In September 1992, respondent forwarded to his client a settlement statement and check from his client trust account in the amount of $60,124.39, representing his client’s share after deducting his fee and various legal and medical expenses. Ms. Mitter and her new attorney made numerous requests to respondent for a detailed accounting. Respondent failed to comply with these requests.
In September 1996, Ms. Mitter filed suit against respondent, seeking an accounting of the settlement funds. Respondent failed to answer the suit, and the trial court entered a default judgment against him. On January 9, 1997, the court entered judgment in favor of Ms. Mitter in the amount of $85,875.56, plus interest.
Five days later, respondent filed a motion for new trial. In addition, he provided an accounting and disbursed to Ms. Mitter an additional $35,343.90 from the original settlement. Subsequently, the parties agreed to a settlement, whereby respondent agreed to pay the interest accrued on the $35,243.90 improperly withheld from Ms. Mitter and court costs, totaling $13,093.13. However, respondent failed to satisfy his financial obligation under the negotiated settlement.

\ ¿Failure to Cooperate Charges

Ms. DeLarge and Ms. Mitter filed complaints with the ODC. The ODC forwarded these complaints to respondent by certified mail and requested information from him. Respondent failed to comply with these requests.
DISCIPLINARY PROCEEDINGS

Formal Charges

After investigation, the ODC filed formal charges against respondent in the De-Large matter. These charges alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3 (lack of diligence), 1.4 (failure to communicate), 1.15(a) (failure to keep client and third party funds separate from the lawyer’s own property), 1.15(b) (failure to promptly deliver funds or property owed to a client or third party and failure to render a full accounting upon request), 1.15(c) (failure to place property *491 subject to a dispute with another party in trust), 1.16(d) (failure to protect client interests upon termination of representation), 5.5(a) (engaging in the unauthorized practice of law), 8.1(e) (failure to cooperate with the ODC in its investigation), 8.4(a) (violating the Rules of Professional Conduct), 8.4(b) (commission of a criminal act adversely reflecting on a lawyer’s honesty, trustworthiness, or fitness as a lawyer), 8.4(c) (engaging in conduct involving deceit, dishonesty, fraud, or misrepresentation), 8.4(d) (conduct prejudicial to the administration of justice), and 8.4(g) (failure to cooperate with the ODC).
One month later, the ODC filed a separate set of formal charges involving two counts of misconduct stemming from the Mitter complaint. These charges alleged violations of the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 1.15(a), 1.15(b), 1.16(d), 3.2 (failure to expedite litigation), 3.4(a) | ^(unlawfully obstructing another party’s access to evidence), 3.4(c) (failure to comply with tribunal orders), 8.1(c), 8.4(a), 8.4(b), 8.4(c), 8.4(d), and 8.4(g).
Respondent failed to file an answer to the complaints. Accordingly, the matters were submitted to the hearing committees on documentary evidence only.[3]

Recommendations of the Hearing Committees

DeLarge Matter

The hearing committee determined the formal charges were supported by the documentary evidence. The committee found respondent failed to provide an accounting, converted funds to his own use, engaged in the unauthorized practice of law, and failed to cooperate in the disciplinary investigation. It further found respondent’s continuing failure to make restitution to his victim and rectify the consequences of his conduct, his total “disappearance” and unauthorized practice of law must be construed as intentional and knowing misconduct.
The committee concluded the baseline sanction for this misconduct was disbarment. The committee did not identify any mitigating factors, but recognized numerous aggravating factors to be present, including prior discipline, dishonest or selfish motive, pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceeding, refusal to acknowledge the wrongful nature of conduct, and substantial experience in the practice of law (admitted 1967). Accordingly, the committee recommended the imposition of disbarment.
| (Mitter Matter
The hearing committee determined the evidence submitted by Ms. Mitter in support of her complaint established a prima facie case that respondent failed to promptly account for her funds, failed to respond to her requests for information, failed to pay the judgment entered against him in her favor, and failed to promptly disburse settlement funds. Based on the evidence, the committee maintained disbarment was appropriate in light of respondent’s conversion of his client’s funds and his failure to make any efforts to repay the funds even after a monetary judgment was rendered against him. Thus, it recommended imposition of disbarment.

Disciplinary Board Recommendation

The disciplinary board issued a single recommendation encompassing both the DeLarge and Mitter proceedings. The *492 board adopted the findings of the hearing committees in all significant respects.[4]
The board found respondent violated duties owed to his clients, the public, the legal system, and the profession. It stated his continued failure to account to or make restitution to his victims or to rectify the consequences of his offenses was intentional and knowing misconduct, causing his clients (and possibly various medical providers) to be wrongfully deprived of the funds to which they are entitled.[5] The board ^recognized the presence of numerous aggravating factors, including prior discipline, dishonest or selfish motive, pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceedings by intentionally failing to comply with the disciplinary rules, refusal to acknowledge the wrongful nature of the misconduct, substantial experience in the practice of law, and indifference to making restitution. The board found no mitigating factors are present.
Relying on the ABA’s Standards for Imposing Lawyer Sanctions and jurisprudence from this court, the board concluded imposition of disbarment to be appropriate under the facts. Recognizing that respondent is currently disbarred, it recommended that the effective date of the disbarment imposed in this case be effective upon the expiration of his prior disbarment imposed in White II[6] The board further recommended respondent be ordered to make restitution to his victims.
Although neither respondent nor the ODC objected to the disciplinary board’s recommendation, this court, on its own motion, ordered briefing pursuant to Supreme Court Rule XIX, § 11(G)(1)(a). The court’s September 18, 2002 order directed the parties “to address whether the sanction of permanent disbarment pursuant to Supreme Court Rule XIX, Sections 10(a) and 24, as amended August 1, 2001, is appropriate under the facts of this case.”
DISCUSSION
Bar disciplinary matters come within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has Lbeen proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343; Louisiana State Bar Ass’n v. Boutall, 597 So.2d 444 (La.1992). While we are not bound in any *493 way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee’s factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
Based on our independent review, we conclude the findings of the hearing committee, as modified by the disciplinary board, are supported by the record. The undisputed evidence demonstrates that respondent failed to account for and commingled chent funds, did not communicate with his clients, failed to cooperate in the disciplinary investigations, and ignored the orders of this court prohibiting him from practicing law.
Having found professional violations, we now turn to a determination of an appropriate sanction for this misconduct. The purpose of disciplinary proceedings is not primarily to punish the lawyer, but rather to maintain the appropriate standards of professional conduct, to preserve the integrity of the legal profession and to deter other lawyers from engaging in violations of the standards of the profession. In re: Vaughan, 00-1892 (La.10/27/00), 772 So.2d 87; In re: Lain, 00-0148 (La.5/26/00), 760 So.2d 1152; Louisiana State Bar Ass’n v. Levy, 400 So.2d 1355 (La.1981). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. In re: Redd, 95-1472 (La.9/15/95), 660 So.2d 839; Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
In reviewing the misconduct, we find that it occurred within the same general time frame as the misconduct at issue in White II and White III. In Louisiana State Bar Ass’n v. Chatelain, 573 So.2d 470 (La.1991), we observed that when a second |flattorney disciplinary proceeding involves conduct which occurred during the same time period as the first proceeding, the overall discipline to be imposed should be determined as if both proceedings were before the court simultaneously. In that case, involving an attorney who was already disbarred, we declined to disbar the respondent again or extend the minimum period for readmission. Rather, we adjudged the attorney guilty of additional misconduct which could be considered in the event the attorney sought readmission. See also In re: Patrick, 01-1419 (La.3/15/02), 815 So.2d 804; In re: Parker, 00-3532 (La.3/15/02), 815 So.2d 794; In re: Gros, 98-0772 (La.3/15/02), 815 So.2d 799.
In determining an appropriate sanction in the instant case, we believe the approach of Chatelain is instructive. Accordingly, our determination of a sanction will be based upon the appropriate sanction we would have imposed if these charges had been before the court at the same time as the charges in respondent’s previous disciplinary proceedings.
Disbarment is clearly the appropriate penalty for the violations in this case. Respondent’s conversion of client funds, neglect of client matters, unauthorized practice of law, and failure to cooperate convincingly demonstrate that he has engaged in some of the most serious professional misconduct an attorney can commit. No mitigating factors are present.
Had the instant charges been filed simultaneously with those charges forming the basis of White II and White III, they would have only reinforced our view that respondent lacks the moral fitness to practice law and must be disbarred, both as a sanction for his misconduct and to protect the public. Therefore, as in Chatelain, we *494 will adjudge respondent guilty of additional violations which warrant disbarment and which will be added to his record for consideration in the event he applies for readmission after becoming eligible to do so. We further emphasize that although | respondent may have a procedural right to apply for readmission, this court retains absolute discretion to grant or deny such an application. In light of respondent’s lengthy history of egregious misconduct, this court will carefully scrutinize any application for readmission with a critical eye.
DECREE
Upon review of the findings and recommendation of the disciplinary board, and considering the record, it is ordered that respondent is adjudged guilty of additional violations which warrant disbarment and may be considered in the event that he applies for readmission from his disbarment in In re: White, 00-2732 (La.4/25/01), 791 So.2d 602, after becoming eligible to do so. Respondent is further ordered to make full restitution to his clients and all third-party medical providers, if any, that are still owed funds. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.
TRAYLOR, J., would permanently disbar.

. In addition to these major disciplinary infractions, respondent has been the subject of other disciplinary proceedings. In 1989, he was suspended from the practice of law for ninety days. Louisiana State Bar Ass'n v. White, 538 So.2d 256 (La.1989). He was also admonished in 1995 and 1994 and reprimanded twice in 1985.

. Although the formal charges state the personal injury case settled for $235,526.73, the record indicates the case settled for $235,574.75, plus $2,951.98 in accrued interest, for a total amount of $238,526.73.

. For reasons which are not entirely clear, the charges arising from the DeLarge matter and the Mitter matter were not consolidated and were heard by separate hearing committee panels.

. The hearing committee found that respondent converted the $2,000 in checks forwarded to him by Ms. DeLarge’s insurance carrier for amounts owed to her medical providers. The board recognized that while respondent failed to advise his client and her medical providers of his receipt of the checks, there was insufficient evidence that he converted the funds. Nonetheless, the board made the specific finding of fact that respondent converted the $10,000 check issued in settlement of Ms. DeLarge’s personal injury claim.

. The board noted in passing that there is no direct evidence whether the medical providers listed on the reconciliation statement provided by respondent to his client relative to the $10,000 payment were ever actually paid. It pointed out the medical providers listed on the statement include those providers allegedly paid by his client, as well as several other providers. Further, the board noted, according to the reconciliation, Ms. DeLarge may not have been ultimately entitled to any funds. However, the board recognized that "given the fact that Ms. DeLarge sought to have some of the medical providers’ payments negotiated downward and the fact that some of the providers may have been paid by [her insurance carrier], she may have been entitled to some funds.” The board found the record to be unclear on this issue.

.Although the board's recommendation was filed in July 2001, several months after White III was rendered, the board was apparently unaware of that case.