ATTORNEY DISCIPLINARY PROCEEDINGS.
hPER CURIAM.
This disciplinary matter arises from eighteen counts of formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Katherine Thompson Tousant, an attorney licensed to practice law in Louisiana, but who is currently suspended from practice on an interim basis. Finding clear and convincing evidence of numerous instances of conversion of client and third party funds, we now disbar respondent.
UNDERLYING FACTS

Mitchell Matter

In March 1998, Iris Mitchell retained respondent to represent her in a personal injury matter. After being retained, respondent refused to return Ms. Mitchell’s telephone calls or answer her letters. Respondent failed to file suit on behalf of Ms. Mitchell, and, as result, Ms. Mitchell’s claim prescribed.

Leger Matter

In 1996, Pearl Leger retained respondent for $1,000 to institute appellate and/or post-conviction proceedings in a criminal case involving her son. For more than one year, Ms. Leger attempted to communicate by telephone and in writing with | ¡.respondent, but was unsuccessful. Respondent failed to take any action in the matter and failed to refund the unearned fee.

Citizen Matter

In October 1996, Betty Citizen paid respondent $1,500 to represent her son in a pending criminal matter. Respondent neglected to enroll as counsel or take any action on behalf of her client.
In June 1997, Ms. Citizen retained respondent to represent her son in a second criminal case, and paid respondent $1,000 toward a total fee of $10,000. Days later, Ms. Citizen asked respondent to refund the deposit because she could not afford the representation. Respondent told Ms. Citizen that she would refund the money. *1050 Thereafter, respondent closed her office and had no further communication with Ms. Citizen. Respondent has never accounted for the $2,500 she was paid by Ms. Citizen, nor has she refunded any unearned fee.

Garcia Matter

Cevero Garcia retained respondent for $4,920 to represent him in appellate proceedings stemming from a criminal conviction where he was facing a substantial prison term. Respondent also obtained Mr. Garcia’s power of attorney and, without authorization, withdrew approximately $23,000 from Mr. Garcia’s employee stock plan and converted the funds to her personal use.
Respondent failed to file Mr. Garcia’s appeal timely and was held in contempt for her omission. Subsequently, Mr. Garcia and his daughter retained two other attorneys to pursue the matter, who were unsuccessful in retrieving the client’s funds and files from respondent.

\nThird Party Medical Provider Matter

Respondent settled the personal injury cases of three clients, and withheld funds totaling $5,625.75[1] from their respective settlements to reimburse a third party medical provider. Respondent failed to remit these funds to the medical provider, despite repeated requests, and converted these funds to her own use. Although respondent ultimately provided restitution in the amount of $1,000, the provider retained counsel, who obtained a civil monetary judgment against respondent for the balance. Respondent has made no attempt to satisfy this judgment.

Hinton Matter

In 1996, Violet Hinton retained respondent for $800 to handle an appeal. Respondent performed no work in the case. Although respondent indicated she was willing to refund the fee, she failed to do so.

Nix Matter

In August 1995, Lawrence Nix retained respondent for $500 to handle a real estate matter. Respondent performed no work in the case and failed to communicate with her client. Respondent refused to return Mr. Nix’s original documents and retainer fee. Mr. Nix obtained a monetary judgment against respondent, but she has made no effort to satisfy this judgment.

Dawson Matter

In December 1996, Richard Dawson retained respondent for $1,500 in connection with a criminal matter. Mr. Dawson requested that respondent assist him |4in withdrawing his guilty plea. Respondent did not withdraw the guilty plea and Mr. Dawson was sentenced to serve five years in prison.
Subsequently, respondent appeared for a deposition before the ODC regarding the matter. Respondent represented that she spent ten hours on the case. The ODC asked her to furnish details regarding the representation. Respondent failed to do so.

Robertson/Brown Matter

Phillip Robertson and his cousin, Donald Brown, retained respondent to represent Mr. Brown in a criminal matter. Mr. Robertson paid respondent a $5,000 retainer fee. Subsequently, respondent met with Mr. Brown for two to three hours while he was incarcerated. She took no other action in the case and failed to communicate with her client, forcing Mr. Brown to retain new counsel. Respondent indicated she would refund the fee, but failed to do so.

*1051
Rideau Matter

In February 1997, Leo Rideau retained respondent to handle a real estate transaction. Mr. Rideau gave respondent $5,500 in cash, $500 of which was a retainer fee and the balance of which was to be held in trust for the sale of immovable property. Respondent did not deposit the funds into a trust account, but instead placed the cash in a file box in her office. Respondent thereafter failed to communicate with her client and converted the funds.

Guidry Matter

Respondent was court-appointed counsel for Rogers Guidry, Jr. in criminal proceedings. Respondent failed to take any action on behalf of her client, including |Rneglecting to file the appeal. She also neglected to communicate with Mr. Guidry for over a period of two and one-half years, as well as lost the trial transcripts that he gave to her to pursue post-conviction relief.

Joubert Matter

Linda Joubert retained respondent to handle a personal injury claim arising out of an automobile accident. In September 1996, Ms. Joubert’s insurance carrier settled the collision portion of the claim for $4,482.55. Respondent did not inform Ms. Joubert of the settlement. Without authorization, respondent cashed the settlement check and converted the funds to her personal use. Ms. Joubert has never received any money from respondent, nor has respondent communicated with her.

Frelot Matter

In October 1997, Mary Frelot, a California resident, retained respondent to handle the succession of her mother. Ms. Frelot paid respondent a $750 retainer fee and $150 for court costs. Thereafter, respondent failed to take any substantive action in the matter. Ms. Frelot made numerous efforts to contact respondent, but was unsuccessful.[2]

Francis Matter

In February 1998, Cynthia Ann Francis retained respondent for $500 to obtain a bond reduction for Mrs. Francis’ son in a criminal matter. Respondent took no action in the case. Although respondent advised Ms. Francis that a court date was set, 1 fiMs. Francis learned no date had ever been set. Respondent agreed to refund the fee paid by Ms. Francis, but never did so.

Tyler Matter

In November 1998, Patricia Tyler retained respondent on a contingency fee basis to represent her in a personal injury claim arising out of a slip and fall accident in Arkansas.[3] Ms. Tyler provided various accident-related documents and evidence, including the shoes she was wearing at the time of the accident, to respondent.
Subsequently, Ms. Tyler retained an attorney licensed to practice law in Arkansas to pursue the matter in that state. On numerous occasions, both Ms. Tyler and her new counsel tried to retrieve Ms. Tyler’s file from respondent. Although the items were crucial to Ms. Tyler’s ease, respondent failed to comply with the requests.

Broussard Matter

In April 1997, Antoine Broussard retained respondent to file a civil suit on his behalf against the Calcasieu Parish School Board. Respondent agreed to take the case for a flat fee in the amount of $800. Mr. Broussard gave respondent an initial deposit of $400 and later paid an additional *1052 $50. However, respondent performed no work in the matter and, subsequently, refused to refund the unearned fee or return her client’s file.

Lewis Matter

In April 1998, Clifford Lewis, a Texas resident, retained respondent to institute divorce proceedings on his behalf. Mr. Lewis paid respondent $400 of the $500 fee |7she requested. Subsequently, respondent failed to take any action in the matter. For over six months, Mr. Lewis took extensive measures to communicate with respondent by telephone and correspondence, but was unsuccessful. Eventually, he took time off from work and traveled from Texas to track respondent down. At that time, she misrepresented to him that she had filed suit in the divorce proceedings. Subsequently, Mr. Lewis learned from the clerk of court that no suit had ever been filed. Mr. Lewis terminated respondent’s representation in July 1999 and demanded a return of the unearned fee, but respondent failed to comply.

Seemion Matter

In March 1999, Martin Luther Seemion retained respondent to institute a filiation proceeding. Although he paid her $500, respondent failed to take any legal action on behalf of her client. Over a period of several months, Mr. Seemion made numerous efforts to communicate with respondent, but was unsuccessful.
DISCIPLINARY PROCEEDINGS

Interim Suspension

In June 1999, while the ODC was completing its investigations of fifteen of the complaints which are the subject of the instant proceeding, respondent filed a motion seeking to be placed on disability inactive status pursuant to Supreme Court Rule XIX, § 22. We granted the request. In re: Tousant, 99-1336 (La.6/4/99), 735 So.2d 627. Thereafter, four additional disciplinary complaints were filed against respondent. In January 2001, respondent petitioned for reinstatement to active status, asserting that her disability had been removed. In connection with the petition, the ODC asked that respondent be placed on immediate interim suspension, based on the seriousness of | ¿the misconduct at issue in the nineteen disciplinary complaints pending against her. We reinstated respondent to active status and ordered an expedited hearing to determine whether she should be placed on immediate interim suspension. In re: Tousant, 01-0331 (La.3/28/01), 783 So.2d 1242. After a hearing, the committee concluded respondent posed a substantial threat of serious harm to the public. We accepted this recommendation and placed respondent on interim suspension. In re: Tousant, 01-0331 (La.6/20/01), 790 So.2d 616.

Formal Charges

Following the completion of its investigations, the ODC filed eighteen counts of formal charges against respondent alleging violations of Rules 1.1 (incompetence), 1.3 (lack of diligence), 1.4 (failure to communicate), 1.5(f)(6) (failure to refund advance fees), 1.15 (commingling and conversion of client and third party funds), 1.16(d) (failure to protect client interests upon termination of representation), 8.4(b) (commission of a criminal act adversely reflecting on a lawyer’s honesty, trustworthiness, or fitness as a lawyer), 8.4(c) (engaging in conduct involving deceit, dishonesty, fraud, or misrepresentation) and 8.4(g) (failure to cooperate with the ODC) of the Rules of Professional Conduct, as well as Supreme Court Rule XIX, § 9(c) (failure to respond to a lawful demand for information from a disciplinary authority).
Respondent neglected to file an answer to the formal charges. Ultimately, the hearing committee chair signed an order declaring the factual allegations deemed admitted and proven by clear and convine- *1053 ing evidence pursuant to Supreme Court Rule XIX, § 11(E)(3), and ordered the parties to submit written arguments and documentary evidence on the issue of sanctions. The ODC submitted evidence in support of its case; respondent made no filing.
| Recommendation of the Hearing Committee
Relying on the deemed admitted order, the hearing committee found the charges proven by clear and convincing evidence. It stated that it was convinced respondent converted and/or failed to refund fees in excess of $57,000, and that her actions were “intentional, dishonest, perhaps criminal.” The committee concluded her actions caused serious injuries to her clients and others, and severely damaged the integrity of the legal profession.
The committee recognized as aggravating factors dishonest or selfish motive, pattern of misconduct, multiple offenses, failure to cooperate, refusal to acknowledge wrongful nature of misconduct, vulnerable victims and indifference to restitution. While the committee recognized respondent’s lack of a prior disciplinary record and personal or emotional problems in mitigation, the committee concluded the sheer number of separate complaints involving serious professional misconduct “make the absence of a prior disciplinary record a most insignificant consideration given the wide swath of irreparable damage to her clients left in respondent’s wake as she engaged in private practice.” Upon consideration of these factors and jurisprudence from this court, the committee recommended imposition of disbarment.
Respondent filed an objection to the committee’s findings and the proposed sanction of disbarment.

Recommendation of the Disciplinary Board

The disciplinary board determined respondent violated the professional rules as charged. The board found respondent violated duties owed to her clients, the public, and as a professional. It noted her actions were intentional in some cases, and the | ^product of incompetence in others. The board pointed out she caused injury to her clients and third parties by converting their funds, and failing to communicate with her clients. It recognized she allowed a client’s civil claim to prescribe, and some clients lost their rights to appeal and/or to seek post conviction relief. The board found she violated a duty owed to the public through her failure to maintain personal integrity and engaging in dishonest conduct. Finally, it found her failure to cooperate in the investigation of the matters pending against her was a violation of her professional duties.
The board relied on the ABA’s Standards for Imposing Lawyer Sanctions to conclude the appropriate baseline sanction for respondent’s misconduct is disbarment.[4] The board adopted the aggravating factors and, “few, if any,” mitigating factors cited by the committee. Consider *1054 ing these factors, the board recommended respondent be disbarred.
Respondent filed an objection to the findings and recommendation of the disciplinary board. Accordingly, the matter was docketed for briefing and argument in accordance with Supreme Court Rule XIX, § 11(G).[5]
JyDISCUSSION
Bar disciplinary matters come within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343, 348; Louisiana State Bar Ass’n v. Boutall, 597 So.2d 444, 445 (La.1992).
Respondent failed to file an answer, and as a result, the factual allegations in the formal charges have been deemed admitted. Supreme Court Rule XIX, § 11(E)(3); In re: Donnan, 01-3058 (La.1/10/03), 838 So.2d 715. Based on these deemed admitted facts, we conclude the rule violations alleged by the ODC have been proven by clear and convincing evidence. We turn to the issue of an appropriate sanction for respondent’s misconduct.
In addressing the issue of sanctions, we are mindful that the purpose of disciplinary proceedings is not primarily to punish the lawyer, but rather to maintain the appropriate standards of professional conduct, to preserve the integrity of the legal profession and to deter other lawyers from engaging in violations of the standards of the profession. In re: Vaughan, 00-1892 (La.10/27/00), 772 So.2d 87; In re: Lain, 00-0148 (La.5/26/00), 760 So.2d 1152. The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. In re: Redd, 95-1472 (La.9/15/95), 660 So.2d 839.
It is beyond dispute that respondent’s misconduct is serious in nature. Seldom has this court witnessed such complete and total disregard by an attorney for the welfare of her clients. Her actions jeopardized the rights of her clients in criminal and 11 j>civil matters. She has failed to refund unearned fees, and converted client and third party funds.
Numerous aggravating factors are present, including dishonest or selfish motive, pattern of misconduct, multiple offenses, failure to cooperate, refusal to acknowledge wrongful nature of misconduct, vulnerable victims and indifference to restitution. While we identify two mitigating factors, lack of prior disciplinary record and personal problems, these factors pale in comparison to the vast amount of harm caused by respondent upon her clients.
Under these circumstances, it is clear that disbarment is appropriate. The sole remaining question is whether respondent’s conduct is so egregious that she should be permanently prohibited from applying for readmission.
In Appendix E to Supreme Court XIX, we set forth guidelines for the imposition of permanent disbarment. Guideline 1 applies to “repeated and multiple instances of intentional conversion of client funds with substantial harm.” Respondent’s misconduct in the instant case clearly falls within the parameters of this guideline. The sheer volume of client and third party funds converted by respondent and the *1055 resulting harm visited by her upon her clients as well as third parties demonstrates she represents a danger to the public. While do not lightly impose the sanction of permanent disbarment, we are firmly convinced that we would be remiss in our constitutional duty to regulate the practice of law if we did not impose that sanction here. Accordingly, she must be permanently disbarred.
DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, briefs, and oral argument, it is ordered listhat the name of Katherine Thompson Tousant, Louisiana Bar Roll number 21918, be stricken from the roll of attorneys and that her license to practice law in the State of Louisiana be revoked. Pursuant to Supreme Court Rule XIX, § 24(A), it is further ordered that respondent be permanently prohibited from being readmitted to the practice of law in this state. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

. The patients and the amounts owed were: Larry Brown ($2,076.90); Larry Jackson ($1,993.90); and Josephine Fuselier ($1,554.95).

. At one point, Ms. Frelot got in touch with respondent by telephone, but respondent hung up the phone without communicating with her.

. Ms. Tyler had sustained serious injuries and incurred in excess of $40,000 in medical expenses.

. Standard 4.41 provides disbarment is generally appropriate when: (a) a lawyer abandons the practice and causes serious or potentially serious injury to a client; or (b) a lawyer knowingly fails to perform services for a client and causes serious or potentially serious injury to a client; or (c) a lawyer engages in a pattern of neglect with respect to a client matter and causes serious or potentially serious injury to a client.
Standard 7.1 provides disbarment is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional with the intent to obtain benefit for the lawyer or another, and causes serious or potentially serious injury to a client, the public, or the legal system.

. On the day oral argument was scheduled, respondent filed a motion for continuance, citing medical problems. We denied the motion, but allowed respondent to file a supplemental brief. Respondent failed to do so.