ATTORNEY DISCIPLINARY PROCEEDINGS
liPER CURIAM. *
These consolidated attorney disciplinary proceedings arise from two sets of formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, J. Blake Deshotels, an attorney licensed to practice law in the State of Louisiana. The charges allege respondent violated Rules 1.3 (failure to act with due diligence), 1.16(d) (failure to terminate representation in a manner to reasonably protect client’s interest), 3.3 (making false statements of material fact to a tribunal), 8.4(a) (violating the Rules of Professional Conduct), 8.4(b) (committing a criminal act that adversely reflects on the lawyer’s honesty, trustworthiness or fitness to practice law) and 8.4(d) (engaging in conduct prejudicial to the administration of justice) of the Rules of Professional Conduct.
UNDERLYING FACTS

98-B-m9

This proceeding involves three counts of formal charges emanating from two complaints filed against the respondent regarding his representation of Monroe Wiggins. On March 14, 1995, Mr. Wiggins was convicted of driving while intoxicated (“DWI”), and was to report for service of his jail sentence on March 21. On March 16, Mr. Wiggins and his wife went to the respondent’s office requesting respondent to file a writ application in the court of appeal for review of his conviction. Respondent testified he told Mr. and Mrs. Wiggins at the meeting that his fee was $5,000. Additionally, he stated he was willing to review the transcript and the other documents to determine whether Mr. Wiggins had a viable personal injury claim ^against the other driver in the accident giving rise to the DWI conviction. However, Mr. and Mrs. Wiggins each testified respondent never mentioned the $5,000 fee at the meeting or any time thereafter; rather, they stated respondent told them he would take his fee for the criminal matter from the personal injury proceeds. In any event, it is undisputed that Mr. Wiggins never paid a fee to respondent.
Immediately following the meeting, respondent met with the trial judge and obtained a $7,500 release bond for Mr. Wiggins pending the filing of a writ application with the court of appeal, as well as a forty-five day extension within which to file the application. Subsequently, respondent filed the notice of intent stating the writ application would be filed on or before May 4,1995.
On April 10,1995, respondent reviewed the criminal trial transcript and other related materials. He testified that on that day, he decided the personal injury case was without merit, and he would only represent Mr. Wiggins on the writ application if the $5,000 fee was paid in advance. However, respondent conceded he did not communicate this information to his client until May 3, 1995, one day before the writ application was due, even though Mr. and Mrs. Wiggins left several messages for respondent at his office during this time period to discuss the status of the civil and criminal matters.
On May 3, 1995, Mr. and Mrs. Wiggins went to respondent’s office and signed in the waiting room ledger. What subsequently transpired is in dispute. Respondent testified he met with Mr. Wiggins and unequivocally informed him that he would not take the personal injury case and would only handle the writ application if the fee was paid in *404 advance. Respondent testified Mr. Wiggins left his office stating he would try to raise the funds.
In contrast, Mr. and Mrs. Wiggins both testified they never met with respondent and, after waiting about an hour and a half in respondent’s waiting room, they were advised respondent was out sick. Further, they both testified they spoke with respondent’s paralegal, who advised them everything was taken care of with respect to the application. Telephone message logs from respondent’s office submitted into evidence indicate Mr. and Mrs. Wiggins subsequently left messages for respondent on numerous occasions seeking to discuss the status of the writ application, indicating they believed the attorney-client relationship was never terminated.
laSometime in June, the trial judge determined no application had been filed on Mr. Wiggins’ behalf within the time allowed, and a warrant was issued for Mr. Wiggins’ arrest. When Mrs. Wiggins learned of the warrant, she advised the sheriff there was a mistake because the writ application had been filed by respondent. The sheriff called respondent’s office and requested the secretary to fax to him whatever had been filed on Mr. Wiggins’ behalf. At respondent’s direction, his secretary faxed a copy of the notice of intent and accompanying order, although the delay for filing such had long expired. At no time was the sheriff advised respondent was no longer representing Mr. Wiggins.
On June 22, Mr. Wiggins was arrested and placed in jail to begin serving his sentence. Mrs. Wiggins immediately went to see the trial judge and advised him that respondent filed the writ application on behalf of her husband. When the trial judge told her no application had been filed, Mrs. Wiggins left messages for respondent seeking his immediate assistance.[1] Mrs. Wiggins testified the respondent did not return her calls.
Subsequently, both the trial judge and Mr. and Mrs. Wiggins filed complaints against respondent.[2] On February 15, 1996, formal charges were instituted in the Wiggins matter. Respondent filed a timely answer, denying any misconduct. A formal hearing before the hearing committee was conducted, at which time several witnesses testified.
After the conclusion of the hearing, the hearing committee filed its findings and recommendation with the disciplinary board. The committee found respondent violated the rules as charged. It determined respondent failed to properly terminate his relationship with his client in a manner reasonably designed to protect his client’s interest and that he made false statements of material fact to the court when he represented that he would apply for an emergency writ, but failed to do so without notice to his client. Lastly, it determined respondent’s conduct in allowing his client to remain out of jail was prejudicial to the administration of justice and violative of the professional rules. Based on these findings, the committee recommended respondent be suspended from the practice of law for a period of one year and one day.

_¡498-B-1S50

During the course of the formal hearing in the Wiggins matter, the ODC learned respondent had three criminal convictions (a 1988 driving while intoxicated conviction, a 1992 disturbing the peace conviction and a 1995 driving while intoxicated conviction), which respondent had not reported to the ODC.[3] Accordingly, the ODC instituted separate formal charges based on these convictions.
Respondent answered these charges, stating that the criminal convictions occurred *405 over a period of seven years and did not evidence a consistent course of misconduct that would adversely impact on his ability to practice law. Additionally, he denied having an alcohol or substance abuse problem. On October 10, 1996, respondent submitted an affidavit, in lieu of live testimony before the hearing committee, admitting to the misconduct.[4]
Subsequently, the hearing committee rendered its recommendation on these charges, proposing respondent be suspended from the practice of law for one year, with special conditions.
DISCIPLINARY BOARD REPORT
The disciplinary board consolidated the Wiggins matter and the matter involving respondent’s prior criminal convictions. With respect to the Wiggins matter, the board agreed with the hearing committee’s finding that the respondent failed to properly terminate his relationship with his client. However, it concluded the committee was clearly wrong in finding respondent made false statements of material fact to the trial court and that his actions were ^prejudicial to the administration of justice. The board found there was no evidence in the record to support these charges.
As to the matter involving the criminal convictions, the board found that this charge was not proven by clear and convincing evidence, noting that “there was no evidence introduced whatsoever that these convictions reflect on respondent’s ability or fitness to practice law or that there were violations of Rules 8.4(a) or (b).”
Thus, the board concluded the only misconduct proven was respondent’s failure to properly terminate his representation of his client. It found no other complaints had been filed against the respondent, indicating the misconduct appeared to be an isolated event not likely to reoccur. It further recognized there were several mitigating factors present,[5] and no aggravating factors. Accordingly, the board recommended a public reprimand as the appropriate sanction.
The ODC filed an objection to the findings of the disciplinary board, as well as to the leniency of the proposed sanction. Pursuant to Supreme Court Rule XIX, § 11(G)(1)(b), the matter was set for oral argument.
DISCUSSION
Regarding the Wiggins matter, we find the record supports the finding that respondent failed to properly terminate his representation of Mr. Wiggins, but that his conduct did not involve false statements of material fact to the trial court, or actions prejudicial to the administration of justice. Nonetheless, respondent’s failure to properly terminate the relationship caused significant prejudice to his client, in that the client was arrested and jailed when no post-conviction application was timely filed, and the client lost an opportunity to seek post-conviction relief.[6]
*406 As to the criminal convictions, we find the disciplinary board erred in concluding the ODC failed to prove a violation of Rule 8.4 of the Rules of Professional Conduct. The lerecord indicates that respondent stipulated to the existence of these convictions and explained the facts underlying the convictions, two of which were for driving while intoxicated and one of which related to disturbing the peace. While we acknowledge these convictions do not directly involve the practice of law, these matters, together with the conduct at issue in the Wiggins matter, show a pattern of misconduct which reflects adversely on respondent’s professional fitness. Further, respondent’s conduct may indicate an underlying substance abuse problem which could eventually impact his future representation of clients.
Considering both respondent’s failure to properly terminate his representation of Mr. Wiggins and respondent’s pattern of prior criminal convictions, we find a six month suspension from the practice of law, with all but sixty days deferred, is an appropriate sanction. Following the completion of the active portion of his suspension, respondent shall be placed on two years probation. As a condition of probation, respondent shall enroll in the Lawyer’s Assistance Program and comply with that program’s monitoring conditions.
DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, oral arguments and briefs, it is the decision of this court that respondent, J. Blake Deshotels, be suspended from the practice of law for a period of six months, with all but sixty days of this suspension deferred. It is further ordered that following completion of the active portion of his suspension, respondent shall be placed on probation for a period of two years. As a condition of probation, respondent shall enroll in the Lawyer’s Assistance Program and comply with that program’s monitoring conditions. All costs of these proceedings, in the amount of $1,160.80, are assessed against respondent.

 Traylor, J. not on panel. Rule IV, Part 2, § 3.

. Respondent's office message log indicates Mrs. Wiggins left two messages for the respondent to contact her immediately. The notation on the first message stated “Judge wants Monroe [Wiggins] in jail today.” The other notation read "Judge said she was lying about the appeal.”

. Although Mr. Wiggins eventually retained new counsel, he ultimately decided the serve his sentence rather than pursue his writ application.

.Regarding the charges, the hearing committee noted that at the time of the convictions, unlike the present, the district attorney had no duty to report attorney convictions to the ODC. It further recognized that currently all attorneys are required to notify the ODC of any criminal convictions.

.In his affidavit, the respondent stated his 1988 DWI charge occurred on the night of his law school class reunion when he was headed from a function to the camp where his classmates were staying. On July 26, 1989, he entered a guilty plea in court in Ouachita Parish. While he fails to provide details regarding his sentence, he states he fully complied with the terms.
He further claimed the 1992 disturbing the peace charge stemmed from a "loud argument” at a health club he had with a married woman who was having an affair with his friend. On October 4, 1992, he pled guilty in court in Evangeline Parish. While admitting that he "had gone overboard," he paid the fine and has stayed clear of the woman.
As to the 1995 DWI, respondent stales he “had been ill and on medication. On the way home after purchasing some groceries he stopped and had a couple of drinks with some friends. He fell asleep at the wheel on the way home and ran into a ditch.” On February 8, 1996, he pled guilty in court in Allen Parish. He admitted his wrongdoing and claimed, since that time, he has not driven after drinking.

. The board noted the following factors in mitigation: lack of prior discipline; lack of dishonest or selfish motive; cooperation by respondent' with the ODC; delay in disciplinary proceedings; and remorse.

. The trial judge testified in the disciplinary proceedings that had Mr. Wiggins' new lawyer requested Mr. Wiggins' release pending the filing of the writ application, he would have granted the release since the failure to timely seek post-conviction relief was the respondent's fault. However, Mr. Wiggins and his new counsel were apparently unaware of this fact at the time of Mr. Wiggins' arrest and subsequent incarceration.