*508 ATTORNEY DISCIPLINARY PROCEEDINGS
hPER CURIAM.
This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, John Blake Deshotels, who is currently on interim suspension for threat of harm to the public. In re: Deshotels, 01-3219 (La.12/12/01), 803 So.2d 967.
FORMAL CHARGES
The formal charges, which were filed on January 7, 2002, consist of seventeen counts of misconduct, as follows:
Count I — The Marcantel & Pierce Matters
Respondent was retained to represent Steve Marcantel and James Pierce in connection with criminal matters. In the Marcantel matter, respondent was ordered to file an appellate brief, but he failed to do so. Subsequently, the Third Circuit Court of Appeal ordered respondent to show cause why he should not be held in contempt of court for failure to comply with an order of the court. Similarly, respondent failed to file a brief in the Pierce matter, and once again, the Third Circuit ordered respondent to show cause why he should not be held in contempt of court. Following a hearing on October 7, 1999, the Third Circuit found respondent in contempt of court with Qrespect to both cases, and imposed a $500 fine, a 60-day jail sentence, suspended, and a two-year period of unsupervised probation.
The ODC alleges that respondent’s conduct constitutes a violation of the following provisions of the Louisiana Rules of Professional Conduct: Rules 1.3 (failure to act with reasonable diligence and promptness in the representation of a client), 8.4(a) (violation of the Rules of Professional Conduct), and 8.4(d) (engaging in conduct prejudicial to the administration of justice).
Count II — The Godeaux Matter
Kay Godeaux retained respondent to represent her son in a personal injury matter. Respondent settled the claim without consulting his client, and thereafter he failed to provide his client with an accounting of the settlement funds.[1] Respondent also failed to cooperate with the ODC in its investigation of the complaint filed by Ms. Godeaux.
The ODC alleges that respondent’s conduct constitutes a violation of the following provisions of the Rules of Professional Conduct: Rules 1.4 (failure to communicate with a client), 1.15 (safekeeping property of clients or third persons), 8.1(c) (failure to cooperate with the ODC in its investigation), 8.4(a), 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(g) (failure to cooperate with the ODC in its investigation).
*509 Count III — The Pete Matter
Linda Pete retained respondent to represent her daughter in a personal injury matter. Respondent failed to communicate with Ms. Pete during the course of the ^representation, and after he settled the claim, he failed to provide Ms. Pete with an accounting of the settlement funds.[2] Respondent also failed to cooperate with the ODC in its investigation of the complaint filed by Ms. Pete.
The ODC alleges that respondent’s conduct constitutes a violation of the following provisions of the Rules of Professional Conduct: Rules 1.4, 1.15, 8.1(c), 8.4(a), 8.4(c), and 8.4(g).
Count IV — The Pierce Matter
In connection with the representation of James Pierce that is the subject of Count 1, respondent failed to file an appeal on behalf of his client with this court, and refused to refund the unearned fee he was paid. Respondent also failed to cooperate with the ODC in its investigation of the complaint filed by Mr. Pierce.
The ODC alleges that respondent’s conduct constitutes a violation of the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.5 (fee arrangements), 8.1(c), 8.4(a), 8.4(d), and 8.4(g).
Count V — The Cates Matter
Miranda Cates retained respondent to represent her in a personal injury matter. Respondent failed to communicate with Ms. Cates in the course of the representation and failed to file suit on her behalf in a timely fashion. As a result, Ms. Cates’ claim has prescribed. Respondent also failed to cooperate with the ODC in its investigation of the complaint filed by Ms. Cates.
|4The ODC alleges that respondent’s conduct constitutes a violation of the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 8.1(c), 8.4(a), and 8.4(g).
Count VI — The Martin Matter
Quentin Martin retained respondent to represent him in a personal injury matter. Respondent neglected Mr. Martin’s case for a considerable period of time, then settled the personal injury claim and failed to provide Mr. Martin with an accounting of the settlement funds.[3] Respondent also failed to cooperate with the ODC in its investigation of the complaint filed by Mr. Martin.
The ODC alleges that respondent’s conduct constitutes a violation of the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 1.15, 8.1(e), 8.4(a), 8.4(c), and 8.4(g).
Count VII — The Jacobs Matter
In December 1999, David Jacobs retained respondent to represent him in connection with a Social Security appeal. Respondent failed to communicate with Mr. Jacobs, neglected the matter, and misrepresented the status of the appeal to his client. Respondent also failed to cooperate with the ODC in its investigation of the complaint filed by Mr. Jacobs.
The ODC alleges that respondent’s conduct constitutes a violation of the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 8.1(c), 8.4(a), 8.4(c), and 8.4(g).
*510 | fPount VIII — The Richard Matter
Kevin Dwayne Richard retained respondent to represent him in a personal injury matter. Respondent failed to communicate with Mr. Richard in the course of the representation, then settled the personal injury claim and failed to pay Mr. Richard’s healthcare providers. In addition, the check drawn on respondent’s trust account representing Mr. Richard’s portion of the settlement was returned for insufficient funds.[4] Respondent also failed to cooperate with the ODC in its investigation of the complaint filed by Mr. Richard.
The ODC alleges that respondent’s conduct constitutes a violation of the following provisions of the Rules of Professional Conduct: Rules 1.4, 1.15(a) and (b), 8.1(c), 8.4(a), 8.4(b) (commission of a criminal act reflecting adversely on the lawyer’s honesty, trustworthiness, or fitness as a lawyer), 8.4(c), and 8.4(g).
Count IX — The Seale Matter
In 2000, Mark Seale paid respondent $5,000 to handle various legal matters. Respondent failed to communicate with Mr. Seale and refused to return his files so that Mr. Seale could retain other counsel. Mr. Seale eventually filed suit against respondent in the 15th Judicial District Court seeking the return of his flies. The trial judge, Judge Marilyn Castle, ordered respondent to appear in court on September 10, 2001, but he failed to do so. The matter was reset for November 12, 2001, but again respondent failed to appear.[5] Judge Castle then ordered respondent arrested and held in the Ville Platte jail until he delivered Mr. Seale’s files. Mr. Seale did eventually | r,receive his files, but many of his personal records were missing. Respondent also failed to cooperate with the ODC in its investigation of the complaint filed by Mr. Seale.
The ODC alleges that respondent’s conduct constitutes a violation of the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 1.15(a), 1.16(d) (termination of the representation), 8.1(c), 8.4(a), 8.4(d), and 8.4(g).
Count X — The Guillory Matter
In February 2001, Mark and Mary Guil-lory paid respondent $1,000 to file an appeal in a child support and visitation matter. Respondent failed to communicate with his clients and failed to file the appeal, leading Mr. and Mrs. Guillory to request the return of the fee they paid. Respondent refused to refund the fee. Thereafter, both respondent and his clients were ordered to show cause why the appeal should not be dismissed for failure to pay court costs. Respondent failed to appear, and because Mr. and Mrs. Guillory could not pay the court costs themselves, the appeal was dismissed. Respondent also failed to cooperate with the ODC in its investigation of the complaint filed by Mr. and Mrs. Guillory.
The ODC alleges that respondent’s conduct constitutes a violation of the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 1.5, 8.1(c), 8.4(a), 8.4(c), 8.4(d), and 8.4(g).
Count XI — The Paxton Matter
In January 1999, Michael Paxton retained respondent to represent him in a medical malpractice case. In August 1999, *511 respondent told Mr. Paxton that he had filed for a medical review panel, but thereafter, Mr. Paxton was unable to eommuni-cate |7with respondent. Respondent apparently misrepresented the status of the matter to Mr. Paxton, as no evidence exists relating to a medical review panel proceeding on his behalf. Mr. Paxton was unable to obtain his file from respondent and his medical malpractice claim is now prescribed. Respondent also failed to cooperate with the ODC in its investigation of the complaint filed by Mr. Paxton.
The ODC alleges that respondent’s conduct constitutes a violation of the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 1.16(d), 8.1(c), 8.4(a), 8.4(c), and 8.4(g).
Count XII — The Jerry Chaisson Matter
In 2000, Jerry Chaisson retained respondent to represent him in connection with a false imprisonment claim. Respondent failed to communicate with Mr. Chaisson, neglected the matter, and failed to appear in court for hearings. He also failed to return Mr. Chaisson’s files, and failed to cooperate with the ODC in its investigation of the complaint filed by Mr. Chaisson.
The ODC alleges that respondent’s conduct constitutes a violation of the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 1.16(d), 8.1(c), 8.4(a), and 8.4(g).
Count XIII — The Allen Chaisson Matter
In July 2000, Allen Chaisson paid respondent $1,500 to handle a succession matter. Respondent failed to communicate with Mr. Chaisson, neglected the matter, and failed to return Mr. Chaisson’s files. Respondent also refused to refund the unearned fee he was paid, and failed to cooperate with the ODC in its investigation of the complaint filed by Mr. Chaisson.
|sThe ODC alleges that respondent’s conduct constitutes a violation of the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 1.5, 1.16(d), 8.1(c), 8.4(a), and 8.4(g).

Count XIV— The Beauboeuf Matter

Misty Beauboeuf retained respondent to represent her in a personal injury matter. Respondent failed to communicate with Ms. Beauboeuf and put her case in jeopardy of being dismissed for his failure to respond to discovery. Respondent was ordered by the trial court to file answers to discovery no later than January 19, 2001, but he failed to obey the court order. Respondent also failed to appear for Ms. Beauboeufs deposition, which was then taken without counsel present. He also failed to return Ms. Beauboeufs files, and failed to cooperate with the ODC in its investigation of the complaint filed by Ms. Beauboeuf.
The ODC alleges that respondent’s conduct constitutes a violation of the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 1.16(d), 8.1(c), 8.4(a), 8.4(d), and 8.4(g).
Count XV — The Virginia Guillory Matter
In April 2001, Virginia Guillory paid respondent $500 to handle a criminal matter for her son. Respondent failed to communicate with his client, neglected the criminal matter, and refused to refund the unearned fee he was paid. Respondent also failed to cooperate with the ODC in its investigation of the complaint filed by Ms. Guillory.
The ODC alleges that respondent’s conduct constitutes a violation of the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 1.5, 8.1(c), 8.4(a), and 8.4(g).
| yCount XVI — The D.I. Restaurant Matter
Respondent drew a $183 check on his operating account payable to D. I.’s Res *512 taurant. On March 24, 2001, the check was returned for insufficient funds. Respondent refused to make the check good and criminal proceedings were initiated against him for intentionally issuing a worthless check. Respondent also failed to cooperate with the ODC in its investigation of the complaint filed by the owner of the restaurant.
The ODC alleges that respondent’s conduct constitutes a violation of the following provisions of the Rules of Professional Conduct: Rules 8.1(c), 8.4(a), 8.4(b), 8.4(c), and 8.4(g).
Count XVII — The Slate Matter
Mack Slate retained respondent to represent him in connection with a civil rights claim. Respondent failed to communicate with his client and failed to return Mr. Slate’s files. Respondent also failed to cooperate with the ODC in its investigation of the complaint filed by Mr. Slate.
The ODC alleges that respondent’s conduct constitutes a violation of the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 1.16(d), 8.1(c), 8.4(a), and 8.4(g).
DISCIPLINARY PROCEEDINGS
On January 10, 2002, respondent was personally served with the formal charges while incarcerated in the Evangeline Parish jail in Ville Platte. He failed to answer or otherwise reply to the formal charges. Accordingly, the factual allegations contained therein were deemed admitted and proven by clear and convincing evidence pursuant |10to Supreme Court Rule XIX, § 11(E)(3). No formal hearing was held, but the parties were given an opportunity to file with the hearing committee written arguments and documentary evidence on the issue of sanctions.

Hearing Committee Recommendation

Noting the factual allegations of the formal charges were deemed admitted and proven by clear and convincing evidence pursuant to Supreme Court Rule XIX, § 11(E)(3), the hearing committee agreed that respondent violated the Rules of Professional Conduct as charged. The committee found respondent violated duties owed to his clients, the public, the legal system, and the profession. After consideration of the ODC’s submission in response to the deemed admitted order,[6] the committee concluded that respondent has engaged in persistent and widespread violations of the Rules of Professional Conduct, for which the baseline sanction is disbarment. The committee recognized no mitigating factors, but determined the aggravating factors present include respondent’s prior disciplinary record,[7] dishonest or selfish motive, pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceeding, refusal to acknowledge the wrongful nature of the conduct, vulnerability of the victims, substantial experience in the practice of law (admitted 1986), and indifference to making restitution. Under these circumstances, the committee recommended that respondent be permanently disbarred.
InNeither respondent nor the ODC objected to the hearing committee’s recom *513 mendation.[8]

Disciplinary Board Recommendation

The disciplinary board found that respondent’s misconduct was knowing and intentional, and violated duties owed to his clients, the public, the legal system, and the profession. Respondent’s former clients were wrongfully deprived of funds to which they are entitled; for some, legal rights and remedies were unnecessarily delayed or jeopardized. The legal system suffered actual harm by respondent’s failure to comply with court orders and to diligently pursue his clients’ legal matters. The legal system also suffered actual harm by respondent’s failure to cooperate with the disciplinary investigation. An attorney’s failure to cooperate delays the disciplinary process, unnecessarily diverts the limited resources of the disciplinary system, and impairs the system’s ability to operate efficiently. Finally, respondent violated his duty to the public by failing to maintain his personal integrity. The board adopted the aggravating factors identified by the hearing committee, and agreed that the record does not support a finding of any mitigating factors.
Turning to the issue of an appropriate sanction, the board determined that disbarment is appropriate based upon the AJBA’s Standards for Imposing Lawyer Sanctions and the prior jurisprudence of this court dealing with similar misconduct. Nevertheless, because respondent has demonstrated a complete lack of regard for the |12welfare of his clients and his professional obligations, the board recommended that he be permanently disbarred.
Neither respondent nor the ODC filed a timely objection in this court to the recommendation of the disciplinary board.
DISCUSSION
The deemed admitted facts in this case establish that respondent has failed to communicate with his clients, neglected legal matters and allowed matters to prescribe, disobeyed court orders, failed to return clients’ files, failed to protect clients’ files, converted client funds, failed to provide accountings or to refund unearned fees, and failed to cooperate with the ODC in its investigation. Therefore, the sole issue presented for our consideration is the appropriate sanction for respondent’s misconduct.
In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
Respondent’s conduct clearly violated duties owed to his clients, the public, the legal system, and the profession. Unquestionably, the baseline sanction for such misconduct is disbarment. Numerous aggravating factors are present, including prior disciplinary offenses, dishonest or selfish motive, a pattern of misconduct, *514 multiple offenses, bad faith obstruction of the disciplinary-proceeding, refusal to acknowledge |1sthe wrongful nature of the conduct, vulnerability of the victims, substantial experience in the practice of law, and indifference to making restitution. We are unable to discern any mitigating factors from the record.
Having found disbarment is the appropriate sanction, the sole remaining issue presented for our consideration is whether respondent’s conduct is so egregious that he should be permanently prohibited from seeking readmission to the practice of law.
In Appendix E to Supreme Court Rule XIX, we set forth guidelines illustrating the types of conduct which might warrant permanent disbarment. While these guidelines are not intended to bind this court in its decision-making process, they present useful information concerning the types of conduct we might consider worthy of permanent disbarment. Guideline 1 applies to “repeated or multiple instances of intentional conversion of client funds with substantial harm.”
The record reveals respondent deprived his clients of significant amounts of funds for a lengthy period of time, creating substantial harm. Likewise, respondent’s failure to account for and refund unearned fees paid by his clients resulted in a conversion of those funds to the detriment of his clients. Therefore, we find respondent’s conduct falls within the scope of this guideline.[9]
We do not lightly impose permanent disbarment. Nonetheless, we are firmly convinced that we would be derelict in our constitutional duty to regulate the practice of law if we did not impose that sanction under the instant facts. Respondent’s actions demonstrate he lacks the requisite moral fitness to practice law in this state. | uRespondent has disregarded and ignored his obligation to uphold the high standards of honesty and righteousness that he assumed when he took the oath as a member of the bar of this state. Louisiana State Bar Ass’n v. Haylon, 250 La. 651, 198 So.2d 391, 392 (1967). He has used his law license not to foster the high standards of the profession, but to exploit his clients for his own benefit. This court cannot and will not tolerate such conduct. Respondent’s actions convincingly demonstrate he does not possess the requisite moral fitness to practice law in this state. He must be permanently disbarred.
Accordingly, we will accept the disciplinary board’s recommendation and impose permanent disbarment.
DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, it is ordered that the name of John Blake Deshotels, Louisiana Bar Roll number 17545, be stricken from the roll of attorneys and that his license to practice law in the State of Louisiana be revoked. Pursuant to Supreme Court Rule XIX, § 24(A), it is further ordered that respon *515 dent be permanently prohibited from being readmitted to the practice of law in this state. Respondent is ordered to make restitution to his victims and to repay to the Louisiana State Bar Association Client Assistance Fund any amounts paid to claimants on his behalf. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

. The record reflects that the personal injury claim was settled for approximately $11,000. Ms. Godeaux denied that her son received any of the proceeds of the settlement.

. The record reflects that the personal injury claim was settled for approximately $20,000. Ms. Pete acknowledged that she received $4,000 from the proceeds of the settlement on her daughter's behalf.

. The record reflects that Mr. Martin's personal injury claim was settled for approximately $4,500. Mr. Martin denied receiving any of the proceeds of the settlement.

. The record does not reflect the amount of Mr. Richard's settlement. Mr. Richard acknowledged that he ultimately received approximately $4,000 from the proceeds of the settlement.

. A hearing was held in respondent's absence on November 12, 2001, during which information was presented to Judge Castle indicating that respondent was storing clients’ files in an open carport area of his home, exposed to the elements and the public.

. Respondent filed nothing for the hearing committee's consideration.

. In In re: Deshotels, 98-1349, 98-1350 (La. 10/9/98), 719 So.2d 402, respondent was suspended for six months, with all but sixty days deferred, followed by a two-year period of probation with conditions, for failure to properly terminate his representation of a client and for a pattern of criminal convictions (two DWI convictions and a disturbing the peace conviction).

. Six months after the hearing committee issued its recommendation, and one month after oral argument was heard in this matter by the disciplinary board, respondent sent a letter to the board and the ODC claiming an inability to respond to the formal charges and requesting that the record of these proceedings be reopened "for the purpose of providing evidence and argument.” However, respondent subsequently refused to reply to the ODC’s correspondence concerning his request. As a result, the disciplinary board denied the relief requested by respondent.

. In support of its recommendation of discipline, the board relied upon Guidelines 1 (repeated instances of conversion of client funds with substantial harm) and 9 (serious attorney misconduct preceded by suspension or disbarment for prior instances of serious attorney misconduct) of the permanent disbarment guidelines. However, respondent's 1998 suspension does not constitute "serious attorney misconduct." That term is defined in the permanent disbarment guidelines as "any misconduct which results in a suspension of more than one year." In his prior disciplinary matter, respondent was suspended for six months, with all but sixty days deferred. Accordingly, Guideline 9 is inapplicable in this case.