ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.
_JjThis disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Jeffery Anthony Favors, an attorney licensed to practice law in Louisiana.
UNDERLYING FACTS AND PROCEDURAL HISTORY
The ODC filed four sets of formal charges against respondent. The first set, bearing the disciplinary board’s docket number 02-DB-008, was filed on January 24, 2002 and consists of sixteen counts of misconduct. The second set, bearing the disciplinary board’s docket number 02-DB-133, was filed on December 23, 2002 and consists of five counts of misconduct. The third set, bearing the disciplinary board’s docket number 03-DB-038, was filed on July 2, 2003 and consists of two counts of misconduct. The fourth set, bearing the disciplinary board’s docket number 03-DB-050, was filed on August 14, 2003 and consists of two counts of misconduct.
The first set of formal charges was considered by a hearing committee separately from the other three sets of charges. On September 17, 2003, the following three *678 sets of formal charges were consolidated by order of the disciplinary board for consideration by one hearing committee. Thereafter, on August 15, 2005, the four matters were consolidated by order of the board. On June 2, 2006, the board filed in lathis court a single recommendation of discipline encompassing all four sets of formal charges.

02-DB-008

Counts I & II — The Riley Matter
In November 1999, Belinda Riley hired respondent to handle her personal injury matter. The matter settled for $3,558.25 on July 25, 2000. Thereafter, Ms. Riley’s endorsement was forged on the settlement check and deposited. Respondent failed to inform Ms. Riley of the settlement, which she learned of from the insurance company. Respondent also did not contact her about disbursal of the settlement funds until October 2000. At an October 24, 2000 meeting, Ms. Riley signed the release and received a $1,200 check from respondent as her portion of the settlement. However, respondent did not provide her with a disbursement sheet to account for the rest of the funds.
In April 2001, respondent received a copy of Ms. Riley’s complaint filed against him with the ODC. However, he failed to respond, necessitating the issuance of a subpoena to obtain his sworn statement. He failed to appear on the designated date but appeared the next day to give his sworn statement.
The ODC alleged that respondent’s conduct violated Rules 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.4 (failure to communicate with a client), 1.5(b)(c) (fee arrangements), 1.15(b) (safekeeping property of clients or third persons), 8.1(b) (failure to respond to a lawful demand for information from a disciplinary authority), 8.1(c) (failure to cooperate with the ODC in its investigation), 8.4(a) (violation of the Rules of Professional Conduct), 8.4(b) (commission of a criminal act reflecting adversely on the lawyer’s honesty, | ¡¡trustworthiness, or fitness as a lawyer), 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), 8.4(d) (engaging in conduct prejudicial to the administration of justice), and 8.4(g) (failure to cooperate with the ODC in its investigation) of the Rules of Professional Conduct.
Counts III & IV — The Brewer Matter
In April 2000, Sir Finis Brewer retained respondent to handle his bankruptcy, paying him $385. Respondent filed the initial bankruptcy documents. However, he failed to meet with Mr. Brewer to prepare the schedules and plan despite numerous attempts by his client to contact him. Mr. Brewer’s bankruptcy was eventually dismissed due to respondent’s failure to timely file the schedules or plan. The bankruptcy court also ordered respondent to pay $1,000 in sanctions. Additionally, respondent filed an application to pay the bankruptcy filing fees in installments without his client’s consent and only paid $5.00 towards the filing fee despite receiving $385 from Mr. Brewer. Respondent’s failure to pay the rest of the filing fee resulted in an order to show cause why the bankruptcy should not be dismissed.
In March 2001, respondent received a copy of Mr. Brewer’s complaint filed against him with the ODC. However, he failed to respond, necessitating the issuance of a subpoena to obtain his sworn statement. He failed to appear on the designated date but appeared the next day to give his sworn statement.
The ODC alleged that respondent’s conduct violated Rules 1.1(a) (failure to provide competent representation to a client), 1.2(a) (scope of representation), 1.3, 1.4, *679 1.6, 8.1(b), 8.1(c), 8.4(a), 8.4(c), 8.4(d), and 8.4(g) of the Rules of Professional Conduct.

4Counts v. & VI—The Morris Matter

In November 2000, Ernest Morris, Jr. retained respondent to handle his bankruptcy, paying him $700. Respondent filed the initial bankruptcy documents. However, he failed to attend two creditors’ meetings and failed to file any schedules. In January 2001, Mr. Morris discharged respondent and requested a full refund. In March 2001, the bankruptcy court ordered respondent to refund $500 to Mr. Morris and pay $400 in sanctions for his failure to attend the creditors’ meetings. Thereafter, respondent refunded $500 to Mr. Morris.
In February 2001, respondent received a copy of Mr. Morris’ complaint filed against him with the ODC. However, he faded to respond, necessitating the issuance of a subpoena to obtain his sworn statement. He failed to appear on the designated date but appeared the next day to give his sworn statement.
The ODC alleged that respondent’s conduct violated Rules 1.3, 1.4, 1.5, 3.4(c) (knowing disobedience of an obligation under the rules of a tribunal), 8.1(b), 8.1(c), 8.4(a), 8.4(c), 8.4(d), and 8.4(g) of the Rules of Professional Conduct.
Counts VII & VIII — The Barnes Matter
In June 2000, Ronald Barnes retained respondent to handle his bankruptcy. Mr. Barnes paid respondent $485, $185 of which was for filing fees. Despite attempts by Mr. Barnes to contact respondent, he failed to communicate with his client. He also filed three different bankruptcy petitions for Mr. Barnes, all of which were dismissed due to respondent’s errors. Two of the petitions were filed without Mr. Barnes’ knowledge or consent and included his forged signature. Furthermore, respondent filed an application to pay the filing fees in installments despite the fact 15that Mr. Barnes paid him the fees up front. Respondent also admitted that he was not capable of properly handling bankruptcies.
In February 2001, respondent received a copy of Mr. Barnes’ complaint filed against him with the ODC. However, he failed to respond, necessitating the issuance of a subpoena to obtain his sworn statement. He failed to appear on the designated date but appeared the next day to give his sworn statement.
The ODC alleged that respondent’s conduct violated Rules 1.1(a), 1.2(a), 1.3, 1.4, 1.5, 5.3 (failure to properly supervise non-lawyer assistants), 8.1(b), 8.1(c), 8.4(a), 8.4(b), 8.4(c), 8.4(d), and 8.4(g) of the Rules of Professional Conduct.
Counts IX & X — The Jones Matter
In December 2000, Deborah Jones retained respondent to handle her father’s succession. On December 14, 2000, Ms. Jones paid respondent $540 towards costs and attorney’s fees and gave him several original documents. Ms. Jones’ numerous attempts to contact respondent between January 2001 and March 2001 were unsuccessful. Thereafter, Ms. Jones learned that respondent’s business phone had been disconnected and his law firm had moved to another location. Ms. Jones eventually contacted respondent, who had relocated to Georgia. Respondent agreed to complete the succession from Georgia but thereafter failed to do so. In July 2001, respondent refunded Ms. Jones’ entire payment and provided her with her original documents and succession documents he had prepared on her behalf. The succession documents were not competently prepared.
In June 2001, respondent received a copy of Ms. Jones’ complaint filed against him with the ODC. However, he failed to *680 respond, necessitating the issuance of a lfisubpoena to obtain his sworn statement. He failed to appear on the designated date but appeared the next day to give his sworn statement.
The ODC alleged that respondent’s conduct violated Rules 1.1(a), 1.3, 1.4, 8.1(b), 8.1(c), 8.4(a), 8.4(c), 8.4(d), and 8.4(g) of the Rules of Professional Conduct.
Counts XI & XII — The Katz Matter
Respondent sent ten personal injury clients to Dr. Steven Katz for chiropractic services. Respondent agreed to pay Dr. Katz’ bills upon settlement of his clients’ cases. Respondent failed to communicate the status of the cases to Dr. Katz or respond to his requests for information. Furthermore, two cases settled, and respondent failed to pay Dr. Katz’ bills from the settlements. Dr. Katz’ bills in the two settled cases totaled $3,099.
In July 2001, respondent received a copy of Dr. Katz’ complaint filed against him with the ODC. However, he failed to respond, necessitating the issuance of a subpoena to obtain his sworn statement. In lieu of providing a sworn statement, the ODC allowed respondent to provide his response in writing. Thereafter, the ODC requested further information from respondent, who failed to respond.
The ODC alleged that respondent’s conduct violated Rules 1.4, 1.15(a)(b), 8.1(b), 8.1(c), 8.4(a), 8.4(c), 8.4(d), and 8.4(g) of the Rules of Professional Conduct.
Counts XIII & XIV — The Lightell Matter
In October 2000, Nolan and Leatia Ligh-tell hired respondent to handle their bankruptcy, paying him $700. Respondent filed the bankruptcy petition but failed to file a proper mailing matrix, resulting in the dismissal of the bankruptcy. Despite the |7LighteIls’ numerous attempts to contact respondent, he failed to communicate with his clients. Eventually, the Lightells learned that respondent’s law firm had closed.
In August 2001, respondent received a copy of the Lightells’ complaint filed against him with the ODC. However, he failed to respond, necessitating the issuance of a subpoena to obtain his sworn statement. Respondent failed to appear on the designated date.
The ODC alleged that respondent’s conduct violated Rules 1.3, 1.4, 1.5, 8.1(b), 8.1(c), 8.4(a), 8.4(c), 8.4(d), and 8.4(g) of the Rules of Professional Conduct.
Counts XV & XVI — The Pearl Matter
In March 1999, Michael and Karen Pearl retained respondent to handle Michael’s worker’s compensation matter. In January 2001, the matter settled for $55,000. Michael received $18,000 as his portion of the settlement. Respondent withheld $26,000 to send as a reinstatement payment to the Pearls’ mortgage company, Midland Mortgage. However, respondent failed to remit the $26,000 to Midland Mortgage. Despite the Pearls’ numerous attempts to contact respondent, he failed to communicate with them. Furthermore, respondent was arrested for the theft of the $26,000, which matter is being screened by the Orleans Parish District Attorney’s Office.
In August 2001, respondent received a copy of the Pearls’ complaint filed against him with the ODC. However, he failed to respond, necessitating the issuance of a subpoena to obtain his sworn statement. By letter dated November 11, 2002, respondent indicated he would not be appearing on the designated date.
| sThe ODC alleged that respondent’s conduct violated Rules 1.4, 1.5, 1.15, 8.1(b), 8.1(c), 8.4(a), 8.4(b), 8.4(c), 8.4(d), and 8.4(g) of the Rules of Professional Conduct.
*681 Respondent answered the formal charges, essentially denying the allegations of misconduct.

Formal Hearing

This matter proceeded to a formal hearing on the merits, which was conducted by the hearing committee on July 24, 2002. The ODC introduced documentary evidence and called the following witnesses to testify before the committee: Deborah Jones, Karen Pearl, Michael Pearl, Nolan Lightell, Cheryl Sides (claims adjuster in the Riley matter), Sir Finis Brewer, Ernest Morris, Jr., Ronald Barnes, Hollis Shepherd (respondent’s previous law partner), Theresa Mason-Brown (administrator for Dr. Katz), and Holly Friedman (investigator for the Orleans Parish District Attorney’s Office). Respondent did not appear at the hearing.

Hearing Committee Recommendation

After reviewing the testimony and evidence presented at the hearing, the hearing committee made the following factual findings:
The Riley matter — In November 1999, Ms. Riley hired respondent to handle her personal injury case, which settled on June 25, 2000 for $8,558.25. Respondent did not notify Ms. Riley of the settlement and forged her endorsement on the check. Ms. Riley learned of the settlement after contacting the insurance company’s claims adjuster. Ms. Riley did not hear from respondent until she met with him on October 24, 2000, when she signed a release and received a $1,200 cheek as her portion of the | nsettlement proceeds. Ms. Riley never received a disbursement sheet. Respondent failed to respond to Ms. Riley’s complaint filed with the ODC. He also failed to appear on the designated date to give a sworn statement to the ODC; however, he appeared on June 15, 2001 to provide the sworn statement.
The Brewer matter- — Mr. Brewer paid respondent $385 in filing costs and attorney’s fees to handle his bankruptcy. Respondent failed to timely file the bankruptcy schedules or plan, resulting in Mr. Brewer’s bankruptcy being dismissed and his property being foreclosed upon. Respondent also only paid $5.00 towards the filing fee. Respondent failed to respond to Mr. Brewer’s complaint filed with the ODC. He also failed to appear on the designated date to give a sworn statement to the ODC; however, he appeared on June 15, 2001 to provide the sworn statement.
The Morris matter — Mr. Morris paid respondent $700 to handle his bankruptcy. Respondent failed to appear at any of the court hearings and creditors meetings. Respondent also failed to file the bankruptcy schedules. Mr. Morris eventually terminated respondent’s services and hired another attorney at additional costs. Respondent was sanctioned by the bankruptcy court and ordered to refund Mr. Morris’ money. Respondent failed to respond to Mr. Morris’ complaint filed with the ODC. He also failed to appear on the designated date to give a sworn statement to the ODC; however, he appeared on June 15, 2001 to provide the sworn statement.
The Barnes matter — Mr. Barnes paid respondent $485 to handle his bankruptcy. Respondent filed at least three bankruptcy petitions in Mr. Barnes’ name, two of which were without Mr. Barnes’ consent or signature. All three bankruptcies were dismissed due to respondent’s errors. Respondent also failed to pay the filing fee. He subsequently admitted that he was not capable of properly handling bankruptcy matters. Respondent failed to respond to Mr. Barnes’ complaint |infiled with the ODC. He also failed to appear on the designated date to give a sworn statement to the ODC; however, he appeared on *682 June 15, 2001 to provide the sworn statement.
The Jones matter — In December 2000, Ms. Jones paid respondent $540 to handle her father’s succession. Thereafter, respondent never contacted Ms. Jones and abandoned his law practice. After Ms. Jones filed a complaint against him with the ODC, respondent refunded her money and provided her with inaccurate and incompetently prepared pleadings, which resulted in her having to hire another attorney to handle the succession. Respondent failed to respond to Ms. Jones’ complaint filed with the ODC. He also failed to appear on the designated date to give a sworn statement to the ODC; however, he appeared on June 15, 2001 to provide the sworn statement.
The Katz matter — Respondent referred a number of his clients to Dr. Steven Katz for treatment. Respondent failed to pay Dr. Katz after his clients’ cases settled. Respondent has admitted having knowledge of Dr. Katz’ interest in these cases; nonetheless, no payments have been made to Dr. Katz on the settled cases. Respondent failed to respond to Dr. Katz’ complaint filed with the ODC. Therefore, he was subpoenaed to provide a sworn statement. The ODC allowed him to respond in writing instead. However, respondent failed to respond to the ODC’s subsequent requests for information.
The Lightell matter — Nolan and Leatia Lightell paid respondent $700 in filing costs and attorney’s fees to handle their bankruptcy. Thereafter, respondent never communicated with the Lightells and failed to file the bankruptcy. The Lightells were forced to hire another attorney to handle the bankruptcy, and respondent has not refunded any of their money. Respondent failed to respond to the Lightells’ | ¶ complaint filed with the ODC. He also failed to appear to give a sworn statement to the ODC.
The Pearl matter — Michael and Karen Pearl hired respondent to handle two workers’ compensation cases and a bankruptcy matter, which was to be filed because the Pearls were behind on their home mortgage. In January 2001, Mr. Pearl’s case settled for $55,000. Respondent gave Mr. Pearl a check for $18,000 and advised him he would use $26,000 to pay their home mortgage current. In February 2001, the Pearls received a foreclosure notice and learned that respondent had not made the $26,000 payment on their mortgage. Respondent stole the $26,000 and is presently under investigation by the Orleans Parish District Attorney’s Office. As a result of respondent’s actions, the Pearls’ home was foreclosed upon. They became homeless and had to move in with their respective parents, splitting up the family living situation. Respondent failed to respond to the Pearls’ complaint filed with the ODC. He also informed the ODC that he would not give a sworn statement, despite being subpoenaed to do so.
Based on these findings, the committee determined that respondent violated the Rules of Professional Conduct as alleged in the formal charges. Respondent’s neglect caused serious harm to his clients, especially the Pearls, who lost their home, became homeless, and had their family split as a result of his misconduct. Respondent stole $26,000 from Mr. Pearl’s workers’ compensation settlement. Respondent also took $700 from the Lightells and did no work on their legal matter. Respondent further failed to cooperate with the ODC in its investigations of these complaints. Relying on the ABA’s Standards for Imposing Lawyer Sanctions, the committee determined that the baseline sanction is disbarment.
*683 |T Jn aggravation, the committee found a dishonest or selfish motive, a pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency, submission of false evidence, false statements, or other deceptive practices during the disciplinary process, refusal to acknowledge the wrongful nature of the conduct, vulnerability of the victim, and indifference to making restitution. As a mitigating factor, the committee recognized that respondent has no prior disciplinary record, but noted that respondent was admitted to the practice of law in April 1999 and his pattern of misconduct began as early as October 2000.
Under these circumstances, the committee recommended that respondent be permanently disbarred.
Neither respondent nor the ODC filed an objection to the hearing committee’s recommendation.

02-DB-1S3

Count I — The Knight Matter
In December 1999, Burnetta Williams Knight hired respondent to handle several legal matters concerning the succession of her brother, Tommie James Williams. Ms. Knight paid respondent $1,033.50. Thereafter, respondent neglected the legal matters, failed to communicate with Ms. Knight, and relocated to Georgia without notifying her. Respondent also failed to safeguard and return Ms. Knight’s original documents and failed to refund the unearned fee Ms. Knight paid.
The ODC alleged that respondent’s conduct violated Rules 1.3, 1.4(a)(b), 1.5(a)(b), 1.5(f)(6) (failure to refund an unearned fee), 1.15(a), 1.16(d) (obligations liSupon termination of the representation), and 8.4(a) of the Rules of Professional Conduct.
Counts II & III — The Mizett Matter
In 2001, William Mizett, Jr. hired" respondent to handle his workers’ compensation claim. Thereafter, respondent neglected the matter and failed to communicate with Mr. Mizett, despite numerous attempts by Mr. Mizett to contact him. Respondent’s phone was also disconnected. Furthermore, Mr. Mizett provided respondent with his original documents regarding the matter, which respondent failed to return, preventing Mr. Mizett from hiring new counsel.
In April 2002, respondent failed to claim the certified mail notifying him of Mr. Mizett’s complaint filed against him with the ODC. In May 2002, respondent finally received a copy of the complaint. However, he failed to respond, necessitating the issuance of a subpoena, to be served via certified mail, to obtain his sworn statement. Respondent failed to claim the certified mail.
The ODC alleged that respondent’s conduct violated Rules 1.3, 1.4(a)(b), 1.15(a), 1.16(d), 8.1(b), 8.1(c), 8.4(a), and 8.4(g) of the Rules of Professional Conduct.
Counts TV & V — The Bell Matter
In January 2000, Calvin Bell hired respondent to handle a workers’ compensation claim and a fraud claim. Respondent neglected the matter and incompetently handled court appearances on behalf of his client. Respondent also failed to communicate with Mr. Bell for more than a year and failed to attend scheduled meetings. Furthermore, respondent relocated to Georgia and failed to |uproperly withdraw from the representation of Mr. Bell. Finally, Mr. Bell learned from another attorney that respondent had deceived him as to the status of his legal matters.
In July 2002, respondent received a copy of Mr. Bell’s complaint filed with the ODC. *684 However, he failed to respond, despite numerous requests by the ODC to do so.
The ODC alleged that respondent’s conduct violated Rules 1.1(a), 1.3, 1.4(a)(b), 1.16(d), 8.1(b), 8.1(c), 8.4(a), 8.4(c), and 8.4(g) of the Rules of Professional Conduct.

0S-DB-0S8

Counts I & II — The Lott/Seago Matter
In November 2000, Kenneth Lott hired respondent to represent him in a personal injury matter. In February 2002, after respondent relocated to Georgia, the matter settled for $10,000. The settlement check was made payable to respondent, Mr. Lott, and Majestic Finance, Inc. (“Majestic”), one of Mr. Lott’s creditors. While Mr. Lott gave respondent permission to endorse his name on the check, respondent did not have Majestic’s permission to do so. Nonetheless, respondent deposited the check into his personal checking account. He did not pay any of Mr. Lott’s bills, and he also failed to put funds into the registry of the court after he filed a concursus proceeding and failed to appear for a hearing on the matter.[1] Respondent paid Mr. Lott $500 as his portion of the settlement proceeds but failed to pay Majestic. He also failed to account for the $9,433.50 in fees and expenses he kept for himself.
|1KThe ODC attempted to serve respondent, via certified mail, with notice of Majestic’s complaint. However, respondent failed to claim the mail. As such, he never provided the ODC with a response to the complaint.
The ODC alleged that respondent’s conduct violated Rules 1.15, 8.1(b), 8.1(c), 8.4(a), 8.4(c), and 8.4(g) of the Rules of Professional Conduct.

08-DB-050

Counts I & II — The Ryles Matter
In January 2000, James Thomas Ryles hired respondent to handle a personal injury matter and a workers’ compensation matter. Thereafter, respondent neglected the matters and failed to communicate with Mr. Ryles. Respondent eventually abandoned his practice and relocated to Georgia. Mr. Ryles learned from the workers’ compensation court that respondent would no longer be representing him in the workers’ compensation matter. Mr. Ryles currently does not know the status of his personal injury matter.
The ODC attempted to serve respondent, via certified mail, with notice of Mr. Ryles’ complaint. However, respondent failed to claim the mail. As such, he never provided the ODC with a response to the complaint. He also failed to claim certified mail notifying him of the ODC’s subpoena to take his sworn statement.
The ODC alleged that respondent’s conduct violated Rules 1.3, 1.4, 1.16(d), 8.4(a), and 8.4(g) of the Rules of Professional Conduct.

02-DB-188, 03-DB-088 & 03-DB-050

Respondent failed to answer or otherwise reply to the three sets of formal charges. Accordingly, the factual allegations contained therein were deemed ^admitted and proven by clear and convincing evidence pursuant to Supreme Court Rule XIX, § 11(E)(3). No formal hearing was held, but the parties were given an opportunity to file with the hearing committee written arguments and documentary evidence on the issue of sanctions. Respondent filed nothing for the hearing committee’s consideration.

*685
Hearing Committee Recommendation

After considering the ODC’s submission, the hearing committee found the following:
The Knight matter — Respondent neglected Ms. Knight’s legal matters, failed to communicate with her, failed to return her original documents, and failed to refund the unearned fee she paid him. Respondent further relocated to Georgia without notifying Ms. Knight. In acting as he did, respondent violated the Rules of Professional Conduct as alleged in the formal charges.
The Mizett matter — After being hired by Mr. Mizett, respondent failed to communicate with him despite numerous attempts by Mr. Mizett to contact respondent. Eventually, Mr. Mizett learned that respondent’s phone had been disconnected. Respondent neglected Mr. Mizett’s legal matter and failed to return Mr. Mizett’s original documents. Respondent also failed to respond to the ODC’s numerous requests to respond to Mr. Mizett’s complaint. In acting as he did, respondent violated the Rules of Professional Conduct as alleged in the formal charges.
The Bell matter — Respondent neglected Mr. Bell’s legal matters by fading to be prompt and prepared for court appearances. He failed to communicate with his client and failed to attend scheduled meetings. He also relocated to Georgia and 117failed to notify Mr. Bell that he would no longer be representing him. When he did speak to Mr. Bell, respondent falsely informed him that his lawsuits were filed and up to date. Respondent also failed to respond to Mr. Bell’s complaint filed with the ODC. In acting as he did, respondent violated the Rules of Professional Conduct as alleged in the formal charges.
The Lott/Seago matter — When Mr. Lott’s legal matter settled, respondent deposited the settlement funds into his own personal account, thereby converting client funds. Respondent also failed to pay Mr. Seago, a third party lien holder. Respondent invoked a concursus proceeding but failed to deposit the settlement funds into the registry of the court and failed to appear for a hearing. Respondent paid Mr. Lott $500 but failed to adequately account for the remaining $9,500 of the settlement. Respondent also failed to respond to Mr. Seago’s complaint filed with the ODC or appear for a sworn statement. In acting as he did, respondent violated the Rules of Professional Conduct as alleged in the formal charges.
The Ryles matter — Respondent neglected Mr. Ryles’ legal matters and failed to communicate with Mr. Ryles. Furthermore, respondent abandoned his practice without informing his client. Respondent also failed to respond to Mr. Ryles’ complaint filed with the ODC or appear for a sworn statement. In acting as he did, respondent violated the Rules of Professional Conduct as alleged in the formal charges.
Based on these findings, the committee determined that respondent knowingly violated duties owed to his clients, the public, and as a professional. His misconduct harmed his clients by delaying their legal matters, thus causing them frustration, and by depriving them of their funds. Relying on the ABA’s Standards for Imposing Lavryer Sanctions, the committee determined that disbarment is the baseline sanction.
|1sAs aggravating factors, the committee found a dishonest or selfish motive, a pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency, refusal to acknowledge the wrongful nature of the conduct, vulnerability of the victims, and indifference to making *686 restitution. The committee found no mitigating factors present.
Considering the above findings and this court’s prior jurisprudence, the committee recommended that respondent be disbarred. The committee also recommended that respondent provide complete account-ings and make full restitution to his victims. Finally, the committee recommended that respondent be assessed with all costs and expenses of these proceedings.
Neither respondent nor the ODC filed an objection to the hearing committee’s recommendation.

Disciplinary Board Recommendation 02-DB-008, 02-DB-133, 03-DB-038 & 03-DB-050

After reviewing this consolidated matter, the disciplinary board determined that the hearing committees’ findings of fact are not manifestly erroneous and/or are supported by the factual allegations in the formal charges and evidence submitted in support of those allegations. The board further determined that the rule violations found by the committees are proper.
Based on these determinations, the board found that respondent violated duties owed to his clients, the public, and as a professional. Respondent acted intentionally and caused substantial harm to his clients, the most egregious being the harm caused to the Pearls.
|1flThe board found the following aggravating factors present: a dishonest or selfish motive, a pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency, submission of false evidence, false statements, or other deceptive practices during the disciplinary process, refusal to acknowledge the wrongful nature of the conduct, vulnerability of the victims, and indifference to making restitution. In mitigation, the board recognized that respondent has no prior disciplinary record.
Further relying on Guideline 1 (repeated or multiple instances of intentional conversion of client funds with substantial harm) of the permanent disbarment guidelines and this court’s prior jurisprudence,[2] the board recommended that respondent be permanently disbarred. The board also recommended that respondent provide ac-countings and make restitution to his victims where appropriate. Finally, the board recommended that respondent be assessed with all costs and expenses of these proceedings.
Neither respondent nor the ODC filed an objection to the disciplinary board’s recommendation.
DISCUSSION
Bar disciplinary matters come within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has Rnbeen proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343; Louisiana *687 State Bar Ass’n v. Boutall, 597 So.2d 444 (La.1992). While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee’s factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
The testimony, evidence, and deemed admitted facts support the hearing committees’ and disciplinary board’s findings in these consolidated matters. Respondent failed to provide competent representation to his clients, neglected his clients’ legal matters, failed to communicate with his clients, failed to refund approximately $2,600 in unearned fees, converted approximately $41,000 of client and third-party funds to his own use, engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation, abandoned his law practice when he relocated to Georgia without notice to his clients, and failed to cooperate with the ODC in numerous investigations.
Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
| ai The baseline sanction for this type of misconduct is clearly disbarment. Therefore, the only issue presented for our consideration is whether respondent’s misconduct is so egregious as to warrant permanent disbarment.
Supreme Court Rule XIX, Appendix E depicts conduct that may warrant permanent disbarment. We agree with the disciplinary board that Guideline 1 (repeated or multiple instances of intentional conversion of client funds with substantial harm) is applicable in this matter. Respondent intentionally converted funds belonging to Ms. Riley, Dr. Katz, the Pearls, Mr. Lott, and Mr. Seago. Restitution has not been made to these clients and third parties, and the Pearls in particular were significantly harmed by respondent’s conversion.
The intentional conversion of client funds, coupled with the numerous other acts of misconduct, indicates that respondent lacks the requisite honesty and integrity to practice law. Furthermore, the solitary mitigating factor present in this case — the absence of a prior disciplinary record — is significantly outweighed by the applicable aggravating factors.[3]
Prior jurisprudence reveals that similar cases have resulted in permanent disbarment.[4] Accordingly, respondent must be permanently disbarred.
*688 DECREE
Upon review of the findings and recommendations of the hearing committees and disciplinary board, and considering the record, it is ordered that the name of | ¡¡¡¡Jeffery Anthony Favors, Louisiana Bar Roll number 26029, be stricken from the roll of attorneys and that his license to practice law in the State of Louisiana be revoked. Pursuant to Supreme Court Rule XIX, § 24(A), it is further ordered that respondent be permanently prohibited from being readmitted to the practice of law in this state. It is further ordered that respondent provide accountings and make restitution to his victims. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

. The hearing was held on January 10, 2003. Judgment was rendered in favor of Majestic and against respondent in the amount of $3,058.90 plus $500 in attorney's fees.

. The board cited In re: Deshotels, 03-2060 (La. 12/12/03), 863 So.2d 507 (permanent disbarment for seventeen counts of misconduct involving failing to communicate with clients, neglecting legal matters, allowing matters to prescribe, disobeying court orders, failing to return clients’ files, failing to protect clients’ files, converting client funds, failing to provide accountings, failing to refund unearned fees, and failing to cooperate with the ODC in numerous investigations), and In re: Morphis, 01-2803 (La. 12/4/02), 831 So.2d 934 (permanent disbarment for commingling and converting client funds, engaging in fraud and deceit, and settling cases without his clients’ knowledge or consent).

. Respondent was admitted to the practice of law in 1999, and thus it may be technically true that he lacks experience in the practice of law. However, we will give this fact no weight in mitigation in light of respondent's knowing and intentional actions, the pattern of misconduct, and the numerous offenses present, all of which suggest that his inexperience in the practice of law had little or nothing to do with his misconduct.

. See In re: Tousant, 03-0062 (La. 6/27/03), 851 So.2d 1048, In re: Deshotels, 03-2060 (La. 12/12/03), 863 So.2d 507, and/w re: Martin, 04-0444 (La.9/3/04), 883 So.2d 392.